IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JER/JAMESON MEZZ BORROWER II LLC,[1] | ) | Case No. 11-13338 (MFW) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## DECLARATION OF JAMES L. GREGORY IN SUPPORT OF CHAPTER 11 PETITION

I, James L. Gregory, hereby declare that the following is true to the best of my knowledge, information and belief:

1. I am an officer and director of the captioned debtor and debtor in possession (referred to as the "Debtor" or the "Company"). I have been the Vice President and Manager of the Debtor since August 11, 2011. My current duties for the Debtor include general supervision of, and responsibility for, the Debtor's business and financial affairs and reviewing, formulating and assisting with the Debtor's business plans and strategies. I am authorized to make decisions with respect to all aspects of the management and operation of the Debtor's business including, without limitation, organization, finance, administration, oversight, and the prosecution of these bankruptcy cases. In my capacities with the Debtor, I have general knowledge of the books and records of the Debtor, and am familiar with the Debtor's financial affairs.

---

[1] The Debtor in this case, along with the last four digits of its federal tax identification number, is JER/JAMESON MEZZ BORROWER II LLC (6522). The Debtor's mailing address is 4770 S. Atlanta Road, Suite 200, Smyrna, Georgia 30080.

2. I submit this declaration (the "Declaration") in support of the Debtor's petition. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge, my review of the Debtor's books and records, relevant documents and other information prepared or collected by the employees of the Debtor's affiliates, or my opinion based on my understanding of the Debtor's financial condition. In making my statements based on my review of the Debtor's books and records, relevant documents and other information prepared or collected by employees of the Debtor's affiliates, I have relied upon these employees accurately recording, preparing or collecting any such documentation and other information. If I were called to testify as a witness in this matter, I could and would competently testify to each of the facts set forth herein based upon my personal knowledge, review of documents, or opinion. I am authorized to submit this Declaration on behalf of the Debtor.

A.  **Overview of the Debtor**

3.  Debtor JER/JAMESON MEZZ BORROWER II LLC ("Mezz Borrower 2") is a mezzanine borrower within a muti-tiered financing structure for operating companies JER/Jameson NC Properties LP and JER/Jameson Properties LLC (collectively, the "Mortgage Borrowers"). The Mortgage Borrowers own or lease, and operate, over 100 hotel properties in twelve different states. These properties are operated under the Jameson Inn and Signature Inn brands, and are managed by Park Management Group, Inc. ("PMG"). The Mortgage Borrowers and the Debtor have no employees.



4.  Jameson Inns, Inc., the indirect equity holder of the Debtor, owns and operates, through JER/Jameson Holdco LLC and its subsidiaries, limited service hotel properties under (a) the trademarks The Jameson Inn® and The Jameson Inn and Suites® in the southeastern and midwestern United States and (b) the trademark Signature Inn® in the midwestern United States. A detailed organization chart of the Debtor and its non-Debtor affiliated companies is attached hereto as Exhibit A.

5.  The Mortgage Borrowers operate their businesses through management and license agreements with PMG for each hotel property. PMG, the Mortgage Borrowers, the

Debtor and the Debtor's affiliates share common ownership. Pursuant to the management agreement, the Mortgage Borrowers pay PMG fees and reimbursements to provide numerous services including:

- accounting services, tax and audit preparation, treasury functions, legal services and other general corporate benefits associated with the activities of the Mortgage Borrowers;

- placement of general liability, property insurance and worker's compensation coverage for each of the properties; and

- negotiating and arranging the various acquisitions of real estate and development.

The Mortgage Borrowers pay a base management fee to PMG equal to three percent of annual gross receipts plus reimbursement of certain expenses. The management agreement also calls for an incentive fee equal to one and one half of annual gross receipts once certain income targets are met.

## B. Equity and Significant Indebtedness

6. In 2006, the Mortgage Borrowers and several affiliated entities (including the Debtor) entered into a transaction through which they obtained approximately $335 million in financing. The $335 million loan was initially provided by Wachovia Bank and its affiliates and/or assignees by way of five different credit agreements representing five different tranches of debt, as explained below. The lenders on each tranche of debt are collectively referred to as the "Lenders."

7. The Mortgage Borrowers obtained a $175 million mortgage loan secured by each of the various hotel properties. That loan is currently held by a securitization trust named "Commercial Mortgage Pass-Through Certificate Series 2006-WHALE7." It is serviced and specially serviced by Wells Fargo Bank, N.A., as successor in interest to Wachovia Bank, N.A (the "Mortgage Lender").

8. All of the interests in the Mortgage Borrowers are held by Debtor Mezz Borrower 1. Mezz Borrower 1 obtained a $40 million loan (the "Mezz Loan 1") secured by all of Mezz Borrower 1's equity interests in the Mortgage Borrowers. Upon information and belief, the Mezz Loan 1 was recently assigned and conveyed by AB US REP Jameson LLC ("AB") to ColFin JIH Funding, LLC and CDCF JIH Funding LLC (together, "Colony").

9. All of the interests in Mezz Borrower 1 are held by Mezz Borrower 2. Mezz Borrower 2 obtained a $40 million loan (the "Mezz Loan 2") secured by all of its equity interests in Mezz Borrower 1. The Mezz Loan 2 is currently held by Colony.

# Summary Organizational and Capital Structure



10. All of the interests in Mezz Borrower 2 are held by Mezz Borrower 3. Mezz Borrower 3 obtained a $40 million loan (the "Mezz Loan 3") secured by all of its equity interests in Mezz Borrower 2. The Mezz Loan 3 is currently held by (a) a collateralized debt obligation managed by an affiliate of Gramercy Loan Services LLC ("Gramercy Loan") as JER Investors Trust, Inc. ("JER") or its affiliate. Those two parties have entered into a participation agreement through which Gramercy Loan, as lead lender, is responsible for making the

substantial majority of decisions regarding the loan, and Gramercy Loan has been authorized to act as servicer of the loan.

11. All of the interests in Mezz Borrower 3 are held by Mezz Borrower 4 (collectively, the four mezzanine borrowers are referred to herein as the "Mezz Borrowers"). Mezz Borrower 4 obtained a $40 million loan (the "Mezz Loan 4") secured by all of its equity interests in Mezz Borrower 3. The Mezz Loan 4 is currently held by (a) a collateralized debt obligation managed by an affiliate of Gramercy Loan and (b) JER or its affiliate. As with the Mezz Loan 3, those two parties have entered into a participation agreement through which Gramercy Loan, as lead lender, is responsible for making the substantial majority of decisions regarding the loan, and Gramercy Loan has been authorized to act as servicer of the loan.

12. All of the interests in Mezz Borrower 4 are held by JER/Jameson Holdco LLC.

13. Each of the Mezz Borrowers is a limited liability company ("LLC") governed by an LLC agreement that provides that the companies will be managed by a Board of Directors (collectively, the "LLC Agreements"). Each of the LLC Agreements requires that the respective board contain both "Independent Directors" and "Non-Independent Directors." Upon information and belief, individuals associated with the management company operating the hotel properties, PMG, were initially named as Non-Independent Directors and Officers of the Mezz Borrowers.

14. The five loans are memorialized in a series of documents. For each of the mezzanine loans, there is a Loan Agreement and a Pledge and Security Agreement (respectively,

the "Loan Agreements" and the "Pledge Agreements"). Upon information and belief, those agreements vary only in the parties named and the interests pledged.

15. Upon information and belief, the various Lenders also entered into an intercreditor agreement (the "Intercreditor Agreement"). That agreement specifies the rights among and between the Mortgage Lender and the mezzanine Lenders. None of the Mezzanine Borrowers or the Mortgage Borrower is a party to the Intercreditor Agreement.

16. All of the loans referenced above matured on August 9, 2011, and each of the borrowers, including Mezz Borrower 2, defaulted on that day. Prior to the default, all of the borrowers consistently serviced the debt for their respective loans. The net cash flow (derived from the net revenues of the hotel properties after payment of fees and expenses to PMG) was sufficient to make interest payments associated with the loans.

17. On August 9, 2011, AB, as the lender to Mezz Borrower 1, issued a notice of strict foreclosure under the Uniform Commercial Code. AB also indicated its alternative intention to conduct a public sale of the equity interests in the Mortgage Borrowers on September 8, 2011. Upon information and belief, AB revoked each of the foregoing notices on August 24, 2011.

18. On August 9, 2011, and August 30, 2011, Colony, as the lender to Mezz Borrower 2, provided notice of its intent to conduct a public sale of the equity interests in Mezz Borrower 1 on September 23, 2011. Upon information and belief, Colony periodically adjourned the sale and now intends to proceed with a public sale of the collateral on October 19, 2011.

C. **Significant Prior Legal Proceedings**

19. Prior to the Petition Date, AB and Colony (together, the "Plaintiffs") commenced actions related to the Loan Agreements and Pledge Agreements in the Supreme Court of the State of New York, County of New York, Case Index Nos. 652251/11 and 652252 (the "Prior Suits"). On or about August 12, 2011, the Plaintiffs sought, by Order to Show Cause, temporary restraining orders preventing Gramercy Loan and Gramercy Warehouse Funding I LLC from taking various actions (together, the "TROs").

20. The Prior Suits were filed following the default by certain borrowers (including Mezz Borrower 2) under loans made by the Plaintiffs. As described above, upon the occurrence of the event of default, the Plaintiffs also gave notice of their intention to foreclose on their collateral.

21. Separately, Gramercy Loan, the registered agent for the Lenders to Mezz Borrower 3 and Mezz Borrower 4, gave notice that it was removing the then-current Non-Independent Directors of Mezz Borrower 2 and Mezz Borrower 3; reducing the number of Non-Independent Directors to one; and appointing me to each Board as the Non-Independent Director (collectively, the "Board Changes").

22. In addition, after being appointed the director of Mezz Borrower 2, I exercised my authority to institute similar Board Changes with respect to its wholly-owned subsidiary, Mezz Borrower 1.

23. All of the Board Changes were effectuated on August 11, 2011 in the following manner:

- Gramercy Loan provided notice that the Pledged Securities (as that term is defined in the Mezz Borrower 4 Pledge Agreement) of Mezz Borrower 4 were being registered in the name of Gramercy Loan, as nominee of the Mezz Loan 4 Lender;

- Gramercy Loan then gave notice that, under the Mezz Loan 4 agreement, the Mezz Borrower 4 Pledge Agreement, and the Mezz Borrower 4 LLC Agreement (i) each of the then-current Non-Independent Directors of Mezz Borrower 3 was removed; (ii) the number of Mezz Borrower 3 Directors was reduced to three; and (iii) I was appointed to the Board of Mezz Borrower 3;

- Mezz Borrower 3 and I then entered into a Management Agreement whereby, among other things, I accepted my appointment as a Director of Mezz Borrower 3 and was designated as the "Manager" of Mezz Borrower 3 within the meaning of the Delaware Limited Liability Company Act;

- I was also appointed Vice-President of Mezz Borrower 3;

- Gramercy Loan also provided notice that the Pledged Securities (as that term is defined in the Mezz Borrower 3 Pledge Agreement) of Mezz Borrower 3 were being registered in the name of Gramercy Loan, as nominee of the Mezz Loan 3 Lender;

- Gramercy Loan then gave notice that, under the Mezz Loan 3 agreement, the Mezz Borrower 3 Pledge Agreement, and the Mezz Borrower 3 LLC Agreement (i) each of the then-current Non-Independent Directors of Mezz Borrower 2 was removed; (ii) the number of Mezz Borrower 2 Directors was reduced to three; and (iii) I was appointed to the Board of Mezz Borrower 2;

- Mezz Borrower 2 and I then entered into a Management Agreement whereby, among other things, I accepted my appointment as a Director of Mezz Borrower 2 and was designated as the "Manager" of Mezz Borrower 2 within the meaning of the Delaware Limited Liability Company Act;

- I was also appointed Vice-President of Mezz Borrower 2;

- In addition, pursuant to the Written Consent of the Non-Independent Directors, it was also resolved that (a) the Mezz Borrower 1 Board of Directors was reduced to three, including one Non-Independent Director and two Independent Directors; (b) the then-current Mezz Borrower 1 Non-Independent Directors were removed; and I was appointed Mezz Borrower 1's Non-Independent Director;

- Mezz Borrower 1 and I then entered into a Management Agreement whereby, among other things, I accepted my appointment as a Director of Mezz Borrower 1 and was designated as the "Manager" of Mezz Borrower 1 within the meaning of the Delaware Limited Liability Company Act; and

- I was also appointed Vice-President of Mezz Borrower 1.

24. Through the Prior Suits, the Plaintiffs contested Gramercy Loan's authority to make the Board Changes, and have directly challenged the Boards of Mezz Borrower 1, Mezz Borrower 2 and Mezz Borrower 3 (together, the "Boards"), and interfered with each Board's management of those companies. The Plaintiffs have expressly told me that I am not a director, and have thwarted the directors' requests for information about ongoing operations.

25. On September 21, 2011, the New York State Supreme Court held a hearing regarding the Plaintiffs' motion for a preliminary injunction.

26. In a decision and order dated September 28, 2011, and entered on September 30, 2011, Justice Bernard J. Fried ("Justice Fried") of the New York State Supreme Court held that Gramercy Loan had the right to institute the Board Changes (including my appointment as a non-Independent Director of Mezz Borrower 2 and Mezz Borrower 3), and that Colony had "failed to demonstrate a likelihood of success on the merits of its claim that Gramercy Loan is seeking to interfere with the foreclosure sale by soliciting a bankruptcy."

27. Accordingly, Justice Fried dissolved (i.e., vacated) the TROs, denied the Plaintiffs' request for a preliminary injunction, and ordered the parties to appear for a preliminary conference on November 15, 2011.

### D. Circumstances Leading to the Commencement of the Chapter 11 Case and Goals of Chapter 11 Case

28. Colony, as the Lender to Mezz Borrower 2, has provided notice to the Debtor that it intends to proceed with a public sale of its collateral on October 19, 2011. On October 7, 2010, I sent a letter to Colony (the "Objection Letter") objecting, on behalf of Mezz Borrower 2, to the pending public foreclosure sale related to the collateral. As described in the Objection Letter, the notices did not meet the standards for a commercially reasonable disposition under the Uniform Commercial Code ("UCC"). A copy of the Objection Letter is attached hereto as Exhibit B.

29. On October 9, 2011, Colony responded to my letter (the "Response"). In the Response, Colony disputed the allegations that the foreclosure process has not been conducted in a commercially reasonable manner. According to Colony, the objection to the foreclosure and sale process were made in bad faith and at the behest of Gramercy. A copy of the Response is attached hereto as Exhibit C.

30. In addition, on October 12, 2011, Colony commenced an action in the Supreme Court of the State of New York against Debtor Mezz Borrower 2 and me (the "Declaratory Action"). In the Declaratory Action, Colony seeks a declaratory judgment that the UCC notices are legally effective, and that the process proposed by Colony for the foreclosure is commercially reasonable. Colony also seeks an injunction restraining the Debtor from taking "any action" in connection with the matters raised in the Objection Letter. A hearing on Colony's Declaratory Action is scheduled for November 15, 2011 at 9:30 a.m.

31.     The Debtor continues to manage its business under a cloud of uncertainty created by the continuing foreclosure threats from Colony. The Debtor filed this chapter 11 case to halt the accelerated foreclosure process and permit the Debtor and other parties in interest to thoughtfully maximize value for all stakeholders. The Debtor is a part of a complex and inter-related enterprise; the enforcement steps undertaken by Colony would have consequences to various parties in interest, not merely the lender. Permitting Colony to consummate its foreclosure proceedings and other actions against the Debtor without the involvement of other interested parties, would serve only the interests of Colony and eliminate any potential for the sharing of value among any of the Debtor's other constituents.

32.     After filing its petition, the Debtor intends to pursue all options for the orderly maximization of value for all stakeholders.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 18, 2011

By: /s/ James L. Gregory
Title: Vice President and Manager