# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ------------------------------------------------------- x | | |
| **In re:** | : | **Chapter 11** |
| | : | |
| **JER/Jameson Mezz Borrower II LLC,**[1] | : | **Case No. 11-13338 (MFW)** |
| | : | |
| **Debtor.** | : | **Hr'g Date: TBD** |
| ------------------------------------------------------- x | | **Objection Deadline: TBD** |

## COLONY JIH LENDERS' EMERGENCY MOTION FOR ENTRY OF AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTIONS 362(d) AND (f) OF THE BANKRUPTCY CODE

CDCF JIH Funding, LLC, together with ColFin JIH Funding, LLC (collectively, the "Colony JIH Lenders"), hereby move (the "Motion") for entry of an order pursuant to § 362(d) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") granting the Colony JIH Lenders relief from the automatic stay pursuant to sections 362(d) and (f) of the Bankruptcy Code to take any and all remedies in connection with the Second Mezz Loan (defined below) related to the collateral securing that loan, including, without limitation, the reregistration of the Debtor's pledged 100% membership interest in the First Mezz Borrower (defined below) and the continuation and consummation of the foreclosure upon such interest. In support of this Motion, Colony JIH Lenders respectfully submit the accompanying Declaration of Christian Fuqua dated October 20, 2011 ("Fuqua Declaration") and the exhibits annexed thereto and represent as follows:

## PRELIMINARY STATEMENT

1.      At approximately 11:00 p.m. on October 18, 2011, the above-captioned debtor (the "Debtor"), a single-asset, special-purpose entity, initiated this chapter 11 case, little

---

[1]  The last four digits of the Debtor's federal tax identification number are 6522. The Debtor's mailing address is 4770 S. Atlanta Road, Suite 200, Smyrna, Georgia 30080.

more than 12 and 1/2 hours before the Colony JIH Lenders were to conduct an auction of the Debtor's sole asset, which was pledged to secure a $40 million note, which due to the Debtor's default approaches approximately $45 million of indebtedness owed to the Colony JIH Lenders.

2.     The Debtor's naked chapter 11 petition (unaccompanied by any applications or motions) and the automatic stay that comes into being by its filing does nothing more in the circumstances present here than inequitably subject the Debtor's only creditor to irreparable harm from certain unstayed foreclosure actions scheduled by the senior Mortgage Lender at an indirect, non-debtor subsidiary below this Debtor that actually owns the hotel properties that form the basis of any value flowing up to the Debtor (and to the Colony JIH Lenders' Second Mezz Loan collateral). The stay also subjects the Debtor's only creditor to having value also deteriorate from its collateral value as a result of interest accruing and expenses accruing, but remaining unpaid, on a senior First Mezz Loan. The Debtor's chapter 11 filing does nothing more than hinder and delay the Colony JIH Lenders while in no way benefiting those lenders (the Debtor's only creditor), and is also contrary to the purposes of chapter 11.

3.     The Debtor is *not* an operating company. It has *no* ongoing business operations or employees. Rather, it was established as a special-purpose entity whose *only* "business" according to the LLC Agreement which formed it is to hold the collateral securing Colony JIH Lenders' mezzanine debt, and to pay such debt. Indeed, the Debtor has but *one* asset: a 100% membership interest in the next most senior mezzanine borrower-entity. This asset was pledged to the Colony JIH Lenders, the Debtor's *only* secured creditor and, according to the Debtor's voluntary petition, the only creditor regardless of priority. *See* Debtor's Petition and List of Twenty Largest Unsecured Creditors (which states "none").

2

4. This case could not possibly achieve any legitimate objective of chapter 11. As this court noted in an indistinguishable case, under chapter 11: "There has to be a reorganization purpose. Where [the debtor] just own[s] a piece of paper there is no reorganization purpose. What is to reorganize? [The debtor] own[s] a piece of paper that's pledged to a creditor." Hrg. Tr. of Proceedings Dec. 18, 2001 *In re Primestone Investment Partners L.P.*, Case No. 11355(MFW) (Bankr. Del.) at 62:5-9 (granting motion to dismiss bankruptcy petition), *aff'd Primestone Inv. Partners L.P. v. Vornado PS, L.L.C. (In re Primestone Inv. Partners)*, 272 B.R. 554, 557 (D. Del. 2002).

5. This case bears all the indicia of a bad faith filing of a chapter 11 case, which is both "cause" for relief from the stay, and grounds for dismissal pursuant to 11 U.S.C. § 1112(b), as set forth in the Colony JIH Lenders' motion requesting such dismissal which is filed contemporaneously herewith.

6. Not only does the filing of this special purpose entity frustrate the remedies of the Debtor's sole creditor, the Colony JIH Lenders, it also leaves the Colony JIH Lenders subject to having their collateral value substantially impaired, if not destroyed, by an impending November 1, 2011 foreclosure sale scheduled by the Mortgage Lender, who holds direct mortgage interests in all of the actual hotels that make up the Jameson Inns hotel financing portfolio. The impending November 1, 2011 foreclosure sale covers twenty-one (21) hotels located in Georgia, representing approximately 20% of the total number of 103 hotels in the chain. The Mortgage Lender has also, on information and belief, taken steps to allow the scheduling of foreclosure sales on the remaining hotel properties as well, which would follow. In addition, default interest and enforcement and other covered expenses continue to accrue on the First Mezz Loan which is senior in priority to the Second Mezz Loan that is owed by the

Debtor. While adequate protection has been requested from the Debtor, as of the time of the filing of this motion, the Debtor has not offered or proposed *any* form of adequate protection to the Colony JIH Lenders.

7.     Although the circumstances of this case – an "eve of foreclosure" petition, a special purpose entity with no business other than to obtain and pay the Second Mezz Loan, a two-party dispute with the Debtor's only creditor, a single-asset estate and an imminent unstayed foreclosure of the hotel properties that form the basis of the Colony JIH Lenders' collateral value – taken together should be enough for this Court to grant immediate relief from the stay for "cause," there are also alternative grounds that justify lifting of the stay.

8.     On information and belief, the Debtor has no cash or other property that it could offer to the Colony JIH Lenders in the form of periodic cash payments or replacement liens. On information and belief, although the amount of all senior loans outstanding (Mortgage Loan and First Mezz Loan) is approximately $213 million and the amount due on the Second Mezz Loan is approximately an additional $45 million, a good faith estimate of the value of the entire Jameson Hotel chain is less than the total amount due on the Mortgage Loan, the First Mezz Loan and the Second Mezz Loan. Therefore, there is no equity value in the Second Mezz Loan collateral for any interests that are subordinate to the Colony JIH Lenders' Second Mezz Loan. And, the deterioration in collateral value that is daily being suffered through the accruals of interest and expenses on the Mortgage Loan and First Mezz Loan, and the impending Mortgage Loan foreclosures, result from the Debtor's imposition of the stay in this chapter 11 case, with absolutely no adequate protection from such destruction of value being provided by the Debtor to the Colony JIH Lenders.

9.     In addition, given that the Debtor could not possibly confirm a chapter 11 plan over the dissent of the Colony JIH Lenders, 11 U.S.C. § 1129(a)(10) (requiring at least one impaired, accepting class), the Debtor has no realistic possibility of effecting a plan of reorganization.

10.    Simply put, relief from the automatic stay imposed when the Debtor improperly filed its bankruptcy petition should also alternatively, and independently, be granted to the Colony JIH Lenders pursuant to Section 362(d)(1) for the lack of adequate protection, and under Section 362(d)(2) because the Debtor lacks equity in the Colony JIH Lenders' collateral and that collateral is not necessary to any reasonably possible reorganization.

11.    Finally, given the impending potential destruction of the Colony JIH Lenders' collateral through the foreclosure sales that begin as early as November 1, 2011 by the Mortgage Lender, the Colony JIH Lenders should also be granted immediate relief from stay pursuant to Section 362(f) to prevent irreparable harm on an emergency basis by October 26, 2011. Relief from stay by that date would allow the Colony JIH Lenders to complete their foreclosure auction and take any other remedies with respect to their collateral that they choose. If as anticipated, the Colony JIH Lenders are the prevailing buyer of the First Mezz Borrower's membership interest, this would allow the Colony JIH Lenders to control their own destiny regarding arrangements for payment of the Mortgage Loan. The Debtor should not be allowed to threaten the destruction of the Colony JIH Lenders' collateral through the automatic stay imposed by its bad faith bankruptcy filing.

## JURISDICTION

12.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b). The Motion is a core matter within the meaning of 28 U.S.C. § 157(b)(2).

01: 11531837.7                                                                          070603.1001

13.     Venue of the Motion in this Court is proper pursuant to 28 U.S.C. § 1409.

14.     The statutory predicates for the relief requested herein are §§ 105(a) and 362(d) and (f) of the Bankruptcy Code and related Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

## BACKGROUND

### I.     The Financing Transaction and Related Documents

#### A.     An Overview

15.     The Colony JIH Lenders are the sole secured creditor – and, according to the papers filed with the Debtor's petition, the only creditor – of the Debtor, pursuant to a financing transaction consummated in 2006, involving the Jameson Inn portfolio of hotels.[2] The financing involved a $175 million mortgage loan (the "Mortgage Loan") secured by mortgages on hotel properties and four mezzanine loans (collectively, the "Mezz Loans" and together with the Mortgage Loan, the "Loans") of $40 million each, as more fully described in the following chart:

---

[2] Prior to the Maturity Default, the Colony JIH Lenders purchased the Second Mezz Loan from a previous holder.



$40 MM loan ("Fourth Mezz Loan") controlled by Gramercy. No foreclosure sales or par purchases pending. No other creditors

$40 MM loan ("Third Mezz Loan") controlled by Gramercy. No foreclosure sales or par purchases pending. No other creditors.

$40 MM loan ("Second Mezz Loan") held by Colony JIH Lenders. Only asset of Debtor is equity in First Mezz Borrower that is pledged as collateral to Colony JIH Lenders. UCC Foreclosure Sale was scheduled for October 19, 2011 – stayed as a result of the commencement of this case. No other creditors.

$40 MM loan ("First Mezz Loan") held by Colony JIH Lenders (purchased from AB pursuant to Intercreditor Agreement). No other creditors.

$175 MM Mortgage Loan Serviced by Wells Fargo, secured by mortgages on hotel properties. First set of foreclosure sales scheduled for November 1, 2011.

**Jameson Affiliate**

**Fourth Mezz Borrower**

**Third Mezz Borrower**

**Debtor**

**First Mezz Borrower**

**OpCo/Mortgage Borrowers**

16.      The collateral of each Mezz Loan is 100% of the equity interest of the entity or entities immediately below the borrower of each Mezz Loan in the structure, *e.g.,* the collateral for the Mezz Loan to the Debtor is the equity in the First Mezz Borrower held by the Debtor, and such equity interest is the sole asset of each mezzanine borrower (all mezzanine borrowers are hereinafter collectively referred to as the "Mezz Borrowers"). On information and belief, this financing structure (first mortgage loan followed by various levels of increasingly subordinated mezzanine debt) has been widely used for real estate financing.

17.      JER/Jameson NC Properties LP and JER/Jameson Properties LLC (collectively, the "Mortgage Borrowers") are borrowers on the $175 million Mortgage Loan, which is currently specially serviced by Wells Fargo Bank, N.A. ("Wells Fargo"). The Mortgage Borrowers are non-debtors.

18. The Colony JIH Lenders hold the First Mezz Loan to JER/Jameson Mezz Borrower I LLC (the "First Mezz Borrower"), secured by, *inter alia*, a pledge of the First Mezz Borrower's 100% interest in the Mortgage Borrowers. The Colony JIH Lenders are also the lender of the Second Mezz Loan (together with the First Mezz Loan, the "Senior Mezz Loans") to the Debtor. The First Mezz Borrower is a non-debtor.

19. The Second Mezz Loan was made pursuant to a Second Mezzanine Loan Agreement, dated July 27, 2006 (the "Loan Agreement"). A true and correct copy of the Loan Agreement is attached as Exhibit A to the Fuqua Declaration filed concurrently herewith. The obligations under the Second Mezz Loan are secured by, *inter alia*, a pledge of the Debtor's 100% membership interest in the First Mezz Borrower (the "Pledged Securities"). The pledge of the Pledged Securities was made pursuant to a Second Mezzanine Pledge and Security Agreement, dated July 27, 2006 (the "Pledge Agreement"), entered into by the Debtor. A true and correct copy of the Pledge Agreement is attached to the Fuqua Declaration as Exhibit C.

20. The Debtor was formed as a single-asset, special purpose entity the activities and operations of which are limited by and subject to the terms of the Debtor's limited liability company agreement, dated July 27, 2006 (the "LLC Agreement"), that was entered into by the Third Mezz Borrower, as the sole equity member and Michael G. Morgan and Carrie L. Tillman, as Independent Directors. A true and correct copy of the LLC Agreement is attached to the Fuqua Declaration as Exhibit J.

21. Upon information and belief, Gramercy Warehouse Funding I, LLC and Gramercy Loan Services LLC (collectively, "Gramercy") hold a controlling participation interest in the Third Mezz Loan and the Fourth Mezz Loan (together, the "Junior Mezz Loans"). Upon

information and belief, JER Investors Trust Inc. holds the remaining participation interests in the Third Mezz Loan and the Fourth Mezz Loan.

22.     JER/Jameson Holdco LLC, an affiliate of the Mortgage Borrowers (and collectively with the Mortgage Borrowers and Mezz Borrowers, the "Jameson Holdco Affiliates") owns the 100% equity interest in the Fourth Mezz Borrower.

**B.     The Pledge Agreement and Related Safeguards
        for the Colony JIH Lenders Under the Loan Agreement
        and the LLC Agreement[3]**

23.     Although the *Declaration of James L. Gregory in Support of Chapter 11 Petition* [D.I. 2] (the "Gregory Declaration") generally describes the capital structure of the Debtor, it neglects to mention, let alone describe, the extremely limited purpose of the Debtor and the significant rights and remedies provided to the Colony JIH Lenders under the terms of the relevant loan documents.

**1.     The Pledge Agreement**

24.     Pursuant to section 2 of the Pledge Agreement, the Debtor pledged its sole asset, the equity interest in the First Mezz Borrower (*i.e.,* the Pledged Securities), to the Colony JIH Lenders.  Additionally, the Debtor pledged to the Colony JIH Lenders, among other things, (i) all securities, moneys or property representing dividends or interest on any of the Pledged Securities or representing a distribution in respect of the Pledged Securities, (ii) the capital of the Debtor in the First Mezz Borrower and any and all profits, losses, distributions and allocations attributable thereto, as well as any proceeds of any distribution thereof, (iii) all other payments, if

---

[3] Capitalized terms not defined herein shall have the meanings ascribed to them in the respective document.  This background is being provided for convenience purposes only, and the inclusion and/or exclusion of certain provisions should not be deemed to be a waiver of any rights or obligations thereunder.

any, due or to become due to the Debtor in respect of the Collateral, and (iv) all Accounts, Documents, and General Intangibles (as each item is defined in the Uniform Commercial Code).

25.     Once an Event of Default (as defined in the Loan Agreement) has occurred and is continuing, the Colony JIH Lenders may exercise certain remedies, including, among other things, the right to re-register the Pledged Securities in the name of the Colony JIH Lenders or the Colony JIH Lenders' nominee and, thereafter to exercise all voting and all other corporate rights pertaining to the Pledged Securities, and the right to foreclose on its collateral by public or private sale. (§§ 8-10 of the Pledge Agreement.)

**2.      The Loan Agreement**

26.     The terms of the Loan Agreement, as well as the LLC Agreement clearly demonstrate that the Debtor was structured with significant limitations on its rights, powers and activities – it was set up for the limited purposes of borrowing the Second Mezz Loan and holding the equity interest in the First Mezz Borrower and no other purposes. For instance, the Debtor is prohibited from taking any action that would impair the Colony JIH Lenders' lien (§ 5.28 of the Loan Agreement) and from creating, incurring or assuming any additional liens (§ 5.31 of the Loan Agreement). In fact, until the Colony JIH Lenders' debt is paid in full, the Debtor is prohibited from incurring *any* additional debt (other than in the ordinary course of business that is related to the ownership and operation of its subsidiary or is permitted or contemplated by the Loan Documents). (§ 6.1(a)(vii)(x) of the Loan Agreement; § 9(j)(v)(C) of the LLC Agreement).

27.     Additionally, Article 10 of the Loan Agreement provides that, so long as Colony JIH Lenders' debt is outstanding, the Debtor shall maintain only one account (the "Mezzanine Cash Management Account") into which disbursements from the First Mezz

Borrower may be deposited. The Mezzanine Cash Management Account is subject to the

exclusive dominion and control of the Colony JIH Lenders. (§§ 10.1 and 10.2 of the Loan

Agreement.) The Debtor has no right to withdraw monies from the Mezzanine Cash

Management Account. (§ 10.1 of the Loan Agreement.)

### 3. The LLC Agreement

28. Although the Gregory Declaration asserts that Mr. Gregory "assist[s] with

the Debtor's business plans and strategies" and makes decisions "with respect to all aspects of

the management and operation of the Debtor's business", in reality, under the LLC Agreement,

the Debtor has no business operations.

29. Section 7 of the LLC Agreement provides that the purpose of the Debtor's

existence is to engage *only* in the following activities: (i) to own 100% of the LLC interest in,

and act as the sole equity member of, the First Mezz Borrower, (ii) to enter into and perform its

obligations under the Loan Agreement and the other related loan documents (collectively, the

"Loan Documents") with the Colony JIH Lenders; and (iii) incidental acts for the

accomplishment of the foregoing. For so long as the Second Mezz Loan remains outstanding,

Section 9(j) of the LLC Agreement prohibits the Debtor from incurring, creating or assuming

any indebtedness or liabilities, secured or unsecured, direct or contingent, other than those

incurred in the ordinary course of business that is related to the ownership and operation of the

First Mezz Borrower or as expressly permitted under or contemplated by the Loan Documents

(§ 9(j)(v)(C) of the LLC Agreement).

01: 11531837.7

070603.1001

### C. The Intercreditor Agreement[4]

30. The respective rights, remedies and obligations of the lenders under the Loans, and the relative payment and collateral priorities with respect to the Loans (collectively, the "Lenders") are governed by the Intercreditor Agreement.

31. As explained above, the collateral for each of the Mezz Loans is the equity interest in the entity or entities immediately below the borrower of each Mezz Loan, *e.g.,* the collateral for the Second Mezz Loan is the Debtor's equity interest in the First Mezz Borrower. Thus, the structure established for purposes of making the loans results in the structural subordination of (i) all of the Mezz Loans to the Mortgage Loan, (ii) the Second Mezz Loan, Third Mezz Loan, and Fourth Mezz Loan to the First Mezz Loan and the Mortgage Loan, (iii) the Third Mezz Loan and Fourth Mezz Loan to the Second Mezz Loan, the First Mezz Loan, and the Mortgage Loan, and (iv) the Fourth Mezz Loan to the Third Mezz Loan, the Second Mezz Loan, the First Mezz Loan, and the Mortgage Loan.

32. In the Intercreditor Agreement, each of the Lenders specifically acknowledged and agreed to the subordination established by the structure implemented for purposes of making the Loans. Under the Intercreditor Agreement, rights to payment on each of the Mezz Loans, including upon a default, are subordinated to the rights to payment on the more senior Mezz Loans and the right to payment on the Mortgage Loan. Accordingly, under the clear terms of the Intercreditor Agreement and by virtue of the entities structure established for purposes of making the Loans, the Third Mezz Loan and the Fourth Mezz Loan are subordinate to the Senior Mezz Loans.

---

[4] A true and correct copy of the Amended and Restated Intercreditor Agreement dated as of September 28, 2006 (the "Intercreditor Agreement") is attached to the Fuqua Declaration as Exhibit I.

33.    In light of this structural subordination, and pursuant to the terms of the Intercreditor Agreement, the Junior Lenders (as defined in the Intercreditor Agreement), *e.g.,* Gramercy and JER Investments Trust Inc., are prohibited from causing the borrower of a Senior Junior Loan (as defined in the Intercreditor Agreement), *e.g.* the Debtor, to file bankruptcy. Specifically, Section 11(d)(iv) of the Intercreditor Agreement provides:

> For as long as any applicable Senior Junior Loan with respect to a Junior Lender shall remain outstanding, such Junior Lender shall not, and shall not solicit any Person to ... (1) commence any Proceeding against any applicable Senior Junior Borrower; (2) institute proceedings to have any applicable Senior Junior Borrower adjudicated a bankrupt or insolvent; (3) consent to, or acquiesce in, the institution of bankruptcy or insolvency proceedings against any applicable Senior Junior Borrower; (4) file a petition or consent to the filing of a petition seeking reorganization, arrangement, adjustment, winding-up, dissolution, composition, liquidation or other relief by or on behalf of any applicable Senior Junior Borrower.

*Id.*

34.    Similarly, section 11(d)(ii) of the Intercreditor Agreement provides that, so long as the Mortgage Loan remains outstanding, none of the holders of the Mezz Loans shall "solicit, direct or cause" the Mortgage Borrowers, any of the Mezz Borrowers (which directly and indirectly control the Mortgage Borrowers), or any other person or entity, to commence bankruptcy, insolvency, receivership or similar proceedings with respect to the Mortgage Borrowers.

35.    A junior Mezz Lender can only prevent a more senior Mezz Lender from foreclosing or otherwise realizing upon the equity interests pledged as collateral for its Mezz Loan by exercising its right to effect a "par purchase" of the applicable senior Mezz Loans pursuant to section 14 of the Intercreditor Agreement. As set forth in section 14(c) of the Intercreditor Agreement, the par purchase price for each Mezz Loan is equal to the sum of the outstanding principal balance of the Loan, together with all accrued interest and other amounts

13

due thereon, late charges, default interest, unreimbursed protective advances, costs and expenses (including reasonable legal fees and expenses) incurred in enforcing the applicable Loan documents, and fees and expenses to any third party servicers.

## II.  Actions Taken Prior to, and in Response to, the Maturity Default

### A.  Pre-Default Events

36.  Prior to the Maturity Date, on July 29, 2011 (the "July 29th Letter"), Gramercy notified the Third Mezz Borrower and the Fourth Mezz Borrower that Gramercy "intend[ed] to exercise any and all available rights and remedies upon the maturity of the Loans," including "exercis[ing] the respective rights under Section 8 of each Pledge Agreement to register the applicable Pledged Securities in the name of the applicable Lender or its nominee and/or Section 9 of the Pledge Agreement to collect, receive, appropriate and realize upon the respective Collateral."

### B.  Post-Default Events

37.  The Loans, including the Second Mezz Loan, went into default on their maturity date of August 9, 2011, when the Borrowers failed to make the principal and interest payments due.

#### 1.  Actions Taken By the Holders of the Senior Mezz Loans and Mortgage Loan

38.  On August 9, 2011, the Colony JIH Lenders sent notice to the Borrowers and Lenders that an event of default had occurred under the Second Mezz Loan and that the Colony JIH Lenders intended to commence an Equity Collateral Enforcement Action (as defined in the Intercreditor Agreement).

39.  On the same day, AB US REP Jameson I LLC ("AB"), sent a Notice of Default as well as a Notification of Disposition of Collateral and Notification of Retention of

Collateral (collectively, the "AB Default Notices"), with respect to the First Mezz Loan, and Wells Fargo delivered notice of an event of default under the Mortgage Loan. Thereafter, Wells Fargo delivered a notice of scheduled property foreclosures for twenty-one (21) properties located in Georgia (the "Foreclosure Notice").

40. Upon receipt of the AB Default Notices, on August 10, 2011, the Colony JIH Lenders delivered notice of their intent to exercise their right under Section 14(c) of the Intercreditor Agreement to purchase the First Mezz Loan at par.

41. The Colony JIH Lenders retained Jones Lang LaSalle Hotels ("JLL") to conduct an extensive two-month marketing process of the Debtor's sole asset – the equity interests in the First Mezz Borrower. In furtherance of the marketing effort, JLL established an on-line data room with information relating to the Loans and the underlying properties available to interested parties upon execution of appropriate confidentiality agreements.

42. Additional marketing activities by the Colony JIH Lenders and JLL included the following:

a.    On August 12, 2011, JLL sent marketing teasers by e-mail to approximately 1,500 prospective bidders.

b.    On August 23, 2011, JLL sent a second set of teasers to approximately 800 additional prospective bidders.

c.    Although the foreclosure auction was originally scheduled for September 23, 2011, it was postponed several times -- to October 7, 2011, then to October 14, 2011, and lastly to October 19, 2011. JLL sent notices of the postponements to all 2,300 prospective bidders.[5]

---

[5] As of October 18, 2011, 55 prospective bidders reviewed the purchase opportunity and, of those, 42 signed confidentiality agreements.

d.     JLL also ran advertisements in five media outlets (*Wall Street Journal*, *The New York Times*, *Financial Times*, *Atlanta Journal Constitution* and *Commercial Mortgage Alert*).

43.     The deadline to register to participate for the October 19th auction was October 17, 2011 at 3:00 p.m. As of that date, no prospective bidder (including Gramercy) had registered to participate in the auction.

**2.     Actions Taken By Gramercy as Holder of the Junior Mezz Loans**

44.     Not only did Gramercy fail to register for the auction, it also failed to exercise its rights to effectuate a par purchase of the Colony JIH Lenders' debt, as specifically contemplated by the Intercreditor Agreement. Instead, Gramercy took control of the Second Mezz Borrower (the Debtor), and installed its choice of non-independent director.

45.     On August 11, 2011, only two days after an Event of Default had occurred, Gramercy provided notice to the Borrowers and other Lenders of events of default under the Junior Mezz Loans and further provided a Notice of Registration of the equity interests in the Third Mezz Borrower (pledged by the Fourth Mezz Borrower to Gramercy) in the name of Gramercy. Gramercy also provided a Notice of Registration of the equity interests in the Debtor in the name of Gramercy Loan.

46.     Also on August 11, 2011, Gramercy provided a Notice of Removal and Appointment of Directors of the Debtor, purporting to remove all non-independent directors of the Debtor, reduce the board of the Debtor to three directors, and appoint Mr. Gregory to the board as a non-independent director of the Debtor. Gramercy also provided a Notice of Removal and Appointment of Directors of the Third Mezz Borrower, purporting to remove all non-

independent directors of the Third Mezz Borrower, reduce the board of the Third Mezz Borrower to three directors, and appoint Mr. Gregory to that board as well.

47. On the first day of his appointment, Mr. Gregory, acting in his capacity as a director of Debtor, removed the non-independent directors of the First Mezz Borrower and appointed himself as their replacement.

48. The next day, Mr. Gregory called a joint meeting of the Boards of Directors of the First, Second and Third Mezz Borrowers. Both the Independent Directors and Gramercy were invited to attend. However, neither AB nor the Colony JIH Lenders – the sole creditors of the First Mezz Borrower and the Debtor – were invited to the meeting. Upon information and belief, during that meeting, Gramercy made a presentation regarding its view of the position of the Jameson Holdco Affiliates, which essentially concluded that the valuation of the Jameson Holdco Affiliates exceeded the value of the Mortgage Loan and the Senior Mezz Loans.

49. To date, despite Gramercy's allegations that the value of the Jameson Holdco affiliates puts Gramercy "in the money," Gramercy has not exercised its contractual option under the Intercreditor Agreement to purchase at par the Senior Mezz Loans from the Colony JIH Lenders.

## C. New York State Court Litigations

### 1. Actions Against Junior Mezz Lender Gramercy

50. On August 12, 2011, the Colony JIH Lenders commenced an action against Gramercy in the State Court (Case No. 652252/2011, the "Colony Action") seeking to protect their interests as Lender under the Second Mezz Loan. The Colony JIH Lenders asserted four causes of action against Gramercy: (1) declaratory judgment concerning the rights of the

parties under the Intercreditor Agreement, Gramercy's right to register, acquire, foreclose on or execute on the equity interest; (2) breach of contract based on Gramercy purporting to register certain equity collateral in the name of Gramercy in violation of the Intercreditor Agreement; (3) anticipatory repudiation of the Intercreditor Agreement by Gramercy by soliciting directors or causing the independent directors to authorize the bankruptcy filing of the above-captioned Debtor; and (4) breach of the implied covenant of good faith and fair dealing resulting from Gramercy's unauthorized actions to destroy the value of the Colony JIH Lenders' senior lender rights under the Intercreditor Agreement.

51.     On the afternoon of August 12, 2011, the State Court granted the Colony JIH Lenders' request for a TRO and further ordered Gramercy to show cause in a hearing to be held on September 21, 2011 why a preliminary injunction should not be issued.  [Colony Action, D.I. 8.]

52.     The State Court later dissolved the TRO against Gramercy, following Gramercy's motion to dissolve or narrow the TRO and related memorandum of law (the "TRO Dissolution Memo") [Colony Action, D.I. 9] which stated that Gramercy was not interfering with the foreclosure process, that it had not solicited, directed or caused any borrower to file a chapter 11 petition, and that it had "no intention of doing so."  (TRO Dissolution Memo at 8.)

**2.     Action Against Mr. Gregory and the Debtor**

53.     On October 7, 2011, Mr. Gregory wrote to the Colony JIH Lenders, purportedly on behalf of the Debtor, listing five reasons he believed the notices regarding the Colony JIH Lenders' foreclosure efforts under the Uniform Commercial Code were defective and why they allegedly did not "meet the standards for a commercially reasonable disposition under the UCC." (the "October 7th Letter")

54.    On October 9, 2011, the Colony JIH Lenders responded to Mr. Gregory's letter disputing each of Mr. Gregory's arguments in turn.

55.    In addition, on October 12, 2011, the Colony JIH Lenders commenced an action in the State Court against the Debtor and Mr. Gregory (Case No. 652795/2011, the "Declaratory Judgment Action") seeking declaratory and injunctive relief regarding the October 7th Letter.  Specifically, Colony seeks: (i) a declaratory judgment that all issues raised in the October 7th Letter lack merit and taken as a whole, the foreclosure sale relating to the collateral is being conducted in a commercially reasonable manner; (ii) an injunction prohibiting Mr. Gregory or the Company from taking any action in connection with the allegations made in the October 7th Letter; and (iii) a declaratory judgment that the October 7th Letter and related actions of Mr. Gregory and the Company rendered the non-recourse provisions of the Loan Agreement null and void.

56.    The Declaratory Judgment Action as it relates to the Debtor is stayed before the State Court.

**D.    The Bankruptcy Case**

57.    On October 18, 2011, at approximately 11:00 p.m., just hours before the Colony JIH Lenders' scheduled foreclosure sale at 11:30 a.m. on October 19, 2011, of the Debtor's sole asset – the equity interest in the First Mezz Borrower – the Debtor filed the instant bankruptcy case, thwarting the Colony JIH Lenders' completion of the foreclosure process.

58.    The chapter 11 petition admitted that there are no unsecured creditors of the Debtor.  The board resolution accompanying the petition was executed by James L. Gregory (as Non-Independent Director), Michelle Dreyer (as Independent Director), and Carrie Tillman (as Independent Director) and purported to authorize the Debtor to, among other things, to

01: 11531837.7     070603.1001

commence this chapter 11 case, retain professionals and obtain post-petition financing. Prior to the Petition Date, the Colony JIH Lenders were unaware that Ms. Dreyer had been appointed as an independent director.

59.     The Debtor has not filed any motions in this chapter 11 case and has not sought to schedule a hearing or commence administration of the Debtor's bankruptcy estate.

60.     On October 19, 2011, Colony JIH Lenders' counsel had a conference call with the Debtor's counsel to discuss this case. At that time, counsel to the Colony JIH Lenders asked the Debtor's counsel what the Debtor's proposal was to provide adequate protection to the Colony JIH Lenders as the Debtor's only secured creditor. Debtor's counsel did not make any proposal or offer of adequate protection, instead saying that the Debtor was considering its options. In addition, Debtor's counsel did not disclose when asked how the Debtor was financing this chapter 11 case, including the retention of counsel and its financial advisor.

**E.     Impending Foreclosure at Mortgage Borrower Level**

61.     Pursuant to the Foreclosure Notice issued by Wells Fargo, a foreclosure sale of certain of the assets of the Mortgage Borrower is scheduled for November 1, 2011.

**RELIEF REQUESTED**

62.     By this Motion, the Colony JIH Lenders seek entry of an order terminating the automatic stay with respect to its collateral so as to permit the Colony JIH Lenders to exercise their state-law rights and remedies against the Debtor, including, without limitation, the right to reregister the Debtor's pledged 100% membership interest in the First Mezz Borrower, and to continue and complete the foreclosure sale of such interest, to transfer title to such interest, and to apply the sale proceeds (if any) to the Debtor's obligations to the Colony JIH Lenders. The Colony JIH Lenders further request that any order granting this Motion not be

01: 11531837.7                                                                 070603.1001

stayed under Bankruptcy Rule 4001(a)(3), but be effective and enforceable immediately upon entry.

**BASIS FOR RELIEF REQUESTED**

63.    Section 362(d)(1) of the Bankruptcy Code provides that the bankruptcy court "shall" grant relief from the automatic stay on request of a party in interest (i) "for cause, including the lack of adequate protection of an interest in property of such party in interest," or (ii) "with respect to an act against property." 11 U.S.C. § 362(d)(1). If the movant makes a *prima facie* case for "cause" for relief, the burden of going forward shifts to the debtor pursuant to § 362(g) of the Bankruptcy Code. *Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992). The burden of proof on the issue of whether a secured creditor's interest in property is adequately protected, however, belongs at all times to the debtor. *See* 11 U.S.C. § 362(g)(2); *Wilmington Sav. Fund Soc. v. 1025 Assocs., Inc. (In re 1025 Assocs., Inc.)*, 106 B.R. 805, 810 (Bankr. D. Del. 1989).

64.    In addition, under § 362(d)(2) of the Bankruptcy Code, the stay of an act against property must be lifted if (i) "the debtor does not have an equity in such property" and (ii) "such property is not necessary for an effective reorganization." 11 U.S.C. § 362(d)(2). The movant requesting relief from the stay under § 362(d)(2) bears the burden of proof as to the debtor's equity in the property, at which point the burden shifts to the debtor to prove the feasibility of reorganization. *See* 11 U.S.C. § 362(g); *1025 Assocs.*, 106 B.R. at 810.

**I.    The Circumstances of the Debtor's Bankruptcy Filing
Constitutes a Filing in Bad Faith that Is Cause for Stay Relief**

65.    "Filing bankruptcy in bad faith is 'cause' for relief under [Bankruptcy] Code § 362(d)(1)." *Mother African Union Methodist Church v. Conference of AUFCMP Church (In re Conference of African Union First Colored Methodist Protestant Church)*, 184 B.R. 207,

21

218 (Bankr. D. Del. 1995); *see In re Lippolis,* 228 B.R. 106, 112 (E.D. Pa. 1998) (stay relief granted based upon debtor's bad faith filing); *In re Merchant,* 256 B.R. 572, 576-77 (Bankr. W.D. Pa. 2000) (finding bad faith filing can constitute "cause" for relief from the stay, noting it is an "abuse of § 362 . . . when a debtor has no intention of effectuating a realistic plan of reorganization").

66.     The Debtor filed its bankruptcy petition literally on the eve of the Colony JIH Lenders' foreclosure sale. The Colony JIH Lenders are the Debtor's only creditor. The only asset of the Debtor (the Second Mezz Borrower) is the Colony JIH Lenders' collateral, the interest in the First Mezz Borrower. The Debtor has no operating business, no employees, no trade creditors or bondholders. The Debtor's bankruptcy filing stays the Colony JIH Lenders' actions as secured creditors of the Debtor, while at the same time the pending November 1, 2011 foreclosure sales related to the Mortgage Loan of the actual hotel properties remain unstayed. The only consequence of the Debtor's filing is the inequitable and harmful delay to the Colony JIH Lenders.

67.     The Colony JIH Lenders further incorporate by reference their motion to dismiss the Debtor's case filed concurrently herewith (the "Motion to Dismiss"). For all the reasons stated in the Motion to Dismiss and herein, the Colony JIH Lenders respectfully submit that there is cause to lift the stay under § 362(d)(1) based upon the Debtor's bad faith filing of its chapter 11 case.

## II.     There is Also Cause to Lift the Stay Because the Colony JIH Lenders Lack Adequate Protection

68.     In determining whether a secured creditor's interest in a debtor's assets is adequately protected, courts engage in an analysis of the property's "equity cushion," which is the value of the property after deducting the claim of the creditor seeking relief from the

automatic stay and all senior claims. *In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 207 (3d Cir. 1995).

69.     For purposes of § 362(d)(1), adequate protection exists if there is an equity cushion and (i) such cushion is sufficient to absorb continued interest accrual, or (ii) the debtor is servicing the debt. *Assocs.*, 106 B.R. at 810.  Conversely, where there is no equity cushion and the debtor is not servicing the debt to the movant, the movant's interest is not adequately protected and grounds for relief from the stay exist.  *See id.*

70.     In this case, a good faith estimate of the value of the entire Jameson hotel chain does not exceed the amount of the Mortgage Loan, the First Mezz Loan and the Second Mezz Loan.  Against that value, there is combined approximately $213 million of senior secured debt, in the form of the Mortgage Loan and the First Mezz Loan, plus an additional amount of approximately $45 million owed by the Debtor under the Second Mezz Loan.  In addition, while Mr. Gregory, in his declaration filed with this Court, details the layers of debt throughout the Jameson capital structure, and details the Colony JIH Lenders' acts toward foreclosing on their collateral, he does not disclose to this Court the impending foreclosure sales by the Mortgage Lender, the first of which is scheduled for November 1, 2011.  These scheduled November 1st foreclosure sales include twenty-one hotel properties in Georgia that are *not stayed* by the Debtor's bankruptcy filing.  Furthermore, Mr. Gregory does not disclose to this Court the amount of interest (at the default rate of one month LIBOR plus 6.7%) and expenses that are accruing and not being paid by the First Mezz Borrower or anyone else on the First Mezz Loan that every day eat into the value of the collateral of the Second Mezz Loan.

71.     Finally, the extensive two-month market test of the collateral conducted by JLL prepetition, as indicated by the lack of registered participants (including, most notably,

Gramercy) for the foreclosure sale that was stayed by the Debtor's bankruptcy filing is another indicator that there is no equity value in the Debtor. *See supra* ¶¶ 41-43.

72.     Thus, because the Debtor has not provided or offered *any* form of adequate protection to the Colony JIH Lenders from the immediate deterioration or threat of the complete destruction of their collateral's value caused by the imposition of the automatic stay in this case, the Colony JIH Lenders are entitled to relief from the stay under § 362(d)(1).  Further, because immediate irreparable harm is threatened by the impending Mortgage Loan foreclosures scheduled for November 1, 2011, the Colony JIH Lenders are also entitled to emergency relief under § 362(f) of the Bankruptcy Code.

**III.     Relief from the Automatic Stay is Appropriate under Section 362(d)(2) Because the Debtor Does Not Have Equity in the Collateral and the Collateral is Not Necessary for an Effective Reorganization**

73.     As indicated above, the Debtor lacks any equity in the Colony JIH Lenders' collateral.  Accordingly, relief from the stay is also, and alternatively, mandatory under § 362(d)(2) as the Debtor cannot establish that the collateral is "necessary to an effective reorganization."  11 U.S.C. § 362(d)(2) & (g)(2).  This standard requires "not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*."  *United Savings Ass'n v. Timbers of Inwood Forest Ass'n, Ltd. (In re Timbers of Inwood Forest Ass'n, Ltd.)*, 484 U.S. 365, 375-76 (1988) (emphasis in original).  Put another way, there must be a "reasonable possibility of an effective reorganization within a reasonable time."  *Id.*

74.     Given that the Mortgage Lender is on the cusp of starting foreclosure sales of the underlying hotel properties, the assets in which this Debtor has an indirect interest will soon not be available to satisfy any part of the Second Mezz Loan.  There are no reasonable prospects of reorganization of the Debtor, as the equity membership interest in the First Mezz

Borrower (which is the Debtor's only asset and the Colony JIH Lenders' collateral) is about to become worthless. If that is allowed to happen, the Debtor will have succeeded in destroying the Colony JIH Lenders' collateral by depriving the Colony JIH Lenders' of their ability to control their own destiny upon foreclosing on the collateral, but the Debtor will have accomplished nothing else.

75.     Furthermore, as the Debtor has revealed that there are no unsecured creditors of the Debtor in the list accompanying the Debtor's petition, there can be no impaired accepting class of creditors for the Debtor to seek to confirm a chapter 11 plan, whatever that plan could possibly be proposed to be. 11 U.S.C. § 1129(a)(10). And given that the Colony JIH Lenders are the Debtor's only creditor, no plan could possibly be confirmed over the Colony JIH Lenders' dissent. And to be clear, since this bankruptcy filing is nothing more than an attempt to extort value from the Colony JIH Lenders for the benefit of junior creditors at the Third and Fourth Mezz Borrower levels, the Colony JIH Lenders cannot foresee that the Debtor will make any proposal that the Colony JIH Lenders would consider acceptable. Accordingly, there is no reasonable possibility of an effective reorganization. *See In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 568 (3d Cir. 1994) (finding no effective reorganization was in prospect where creditor whose vote was necessary to carry a chapter 11 plan indicated it would oppose any proposed plan).

**IV.     Waiver of the Fourteen-Day Stay Under Bankruptcy Rule 4001(a)(3) Is Warranted**

76.     Courts may waive the fourteen-day stay under Bankruptcy Rule 4001(a)(3) based upon the totality of the circumstances and as an equitable remedy. *See In re Éclair Bakery Ltd.*, 255 B.R. 121, 143 n.42 (Bankr. S.D.N.Y. 2000) (stay under Rule 4001(a)(3) waived due to debtor's unclean hands); *In re Soltzfus*, No. 09-11904, 2009 Bankr. LEXIS 2634,

*18-19 (Bankr. E.D. Pa. Mar. 30, 2009) (stay under Rule 4001(a)(3) waived due to debtor's improper filing of bankruptcy case).

77.     The Debtor's bad faith filing of its chapter 11 case, where it clearly lacks any ability to effectively reorganize, combined with the imminent threat to the value of the Colony JIH Lenders' collateral represented by the impending foreclosure upon the Mortgage Loan at the Mortgage Borrowers level of the capital structure, all warrant a waiver of the fourteen-day stay. Moreover, given that the Colony JIH Lenders were less than 12 and 1/2 hours away from holding their foreclosure sale, after delays occasioned by the Debtor's specious posturing regarding the "commercial reasonableness" of the sale, the Colony JIH Lenders should not be forced to wait any longer. Accordingly, the Colony JIH Lenders respectfully request that the Court waiver the fourteen-day stay period under Bankruptcy Rule 4001(a)(3).

## ADEQUATE PROTECTION DEMAND

78.     For the avoidance of doubt, this Motion is intended to confirm the prior oral request made by counsel to the Colony JIH Lenders for adequate protection from the Debtor to which, so far, the Debtor has made no offer or proposal, and should be construed, as a formal request for adequate protection pursuant to § 363(e) of the Bankruptcy Code. Accordingly, to the extent the Court is inclined not to grant the relief requested herein, Colony respectfully requests that the Court condition any use, sale or lease of the Colony JIH Lenders' collateral by the Debtor upon the provision of adequate protection to the Colony JIH Lenders.

01: 11531837.7     070603.1001

## **NOTICE**

79.    Notice of this Motion has been provided to (i) counsel for the United States Trustee for the District of Delaware, (ii) counsel for the Debtor, (iii) counsel for Gramercy, and (iv) all parties who have filed appearances in the chapter 11 case. The Colony JIH Lenders submit that no other or further notice is necessary under the circumstances.

*[Remainder of page intentionally left blank]*

01: 11531837.7                                                         070603.1001

## CONCLUSION

For the foregoing reasons, the Colony JIH Lenders respectfully request entry of an order, substantially in the form annexed hereto, (i) granting the Colony JIH Lenders relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code to take any and all remedies in connection with the Second Mezz Loan with respect to the collateral for such loan, including, without limitation, without limitation, the right to reregister the Debtor's pledged 100% membership interest in the First Mezz Borrower, and to continue and complete the foreclosure sale of such interest, to transfer title to such interest, and to apply the sale proceeds (if any) to the Debtor's obligations to the Colony JIH Lenders, and (ii) granting such other relief as may be just and appropriate.

Dated:   Wilmington, Delaware
         October 21, 2011

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Pauline K. Morgan*
Pauline K. Morgan (No. 3650)
John T. Dorsey (No. 2988)
Margaret Whiteman Greecher (No. 4652)
Patrick A. Jackson (No. 4976)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Lindsee P. Granfield, Esq.
Sean A. O'Neal, Esq.
Jane VanLare, Esq.
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Attorneys for the Colony JIH Lenders*

01: 11531837.7

070603.1001