# EXHIBIT A

AFTER RECORDING RETURN TO
GEORGE C. CALLOWAY, ESQ.
SPECIALIZED TITLE SERVICE, INC.
6133 PEACHTREE DUNWOODY ROAD, NE
ATLANTA, GA 30328
(770) 394-7000 STS FILE NO. 1089.499 (B)

**3397**

00215

DECATUR COUNTY, GEORGIA
FILED IN OFFICE

2006 AUG -8 AM 7: 51

RECORDED
BOOK 234 PAGE 215-260

Rebecca McCook
CLERK OF SUPERIOR COURT

Cadwalader, Wickersham and Taft LLP
227 West Trade Street, Suite 2400
Charlotte, North Carolina 28202
Attention: James P. Carroll

## JER/JAMESON PROPERTIES LLC, a Delaware limited liability company, as grantor ("Borrower")

### TO

## WACHOVIA BANK, NATIONAL ASSOCIATION, as grantee ("Lender")

---

## DEED TO SECURE DEBT, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT

---

Dated:      As of July 27, 2006
Location:   As listed on the attached <u>Exhibit B</u>

# DEED TO SECURE DEBT,
## ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT

THIS DEED TO SECURE DEBT, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT (this "Deed to Secure Debt") is made as of the 27th day of July, 2006, by JER/JAMESON PROPERTIES LLC, a Delaware limited liability company, having its principal place of business at c/o SSI PMG LLC, 4770 S. Atlanta Road, Suite 200, Smyrna, Georgia 30080, as grantor ("Borrower"), to WACHOVIA BANK, NATIONAL ASSOCIATION, a national banking association, having an address at Commercial Real Estate Services, 8739 Research Drive URP-4, NC 1075, Charlotte, North Carolina 28262, as grantee (together with its successors and assigns, "Lender").

## RECITALS:

A.  This Deed to Secure Debt is given to secure a loan in the principal sum of ONE HUNDRED SEVENTY FIVE MILLION AND NO/100 DOLLARS ($175,000,000.00) (the "Loan") made by Lender to Borrower and the other entities listed on Schedule 1 attached hereto and by this reference incorporated herein (collectively, the "Other Borrowers") pursuant to that certain Loan Agreement, dated as of the date hereof, among Borrower, the Other Borrowers and Lender (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "Loan Agreement"), and evidenced by that certain Promissory Note, dated the date hereof, made by Borrower and the Other Borrowers, jointly and severally, to the order of Lender (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "Note"). The stated maturity date of the Note is August 8, 2008, subject to three (3) additional one (1) year extensions that may be exercised in accordance with the Loan Agreement. Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Loan Agreement.

B.  Borrower desires to secure the payment of the Debt and the performance of the Other Obligations.

C.  This Deed to Secure Debt is given pursuant to the Loan Agreement, and payment, fulfillment and performance by Borrower and Other Borrowers of their obligations thereunder and under the other Loan Documents are secured hereby, and each and every term and provision of the Loan Agreement, the Note, and the other Loan Documents, including the rights, remedies, obligations, covenants, conditions, agreements, indemnities, representations and warranties of the parties therein, are hereby incorporated by reference herein as though set forth in full and shall be considered a part of this Deed to Secure Debt (the Loan Agreement, the Note, this Deed to Secure Debt and all other documents evidencing or securing the Debt or executed or delivered in connection therewith, are hereinafter referred to collectively as the "Loan Documents").

NOW, THEREFORE, in consideration of the making of the Loan by Lender to Borrower and the Other Borrowers and the covenants, agreements, representations and warranties set forth in this Deed to Secure Debt, and for other good and valuable consideration,

the receipt and sufficiency of which are hereby acknowledged, Borrower hereby covenants and agrees as follows:

## ARTICLE 1

## GRANTS OF SECURITY

Section 1.1 <u>Property Conveyed</u>. NOW, THEREFORE, IN CONSIDERATION OF THE SUM OF $10.00 AND OTHER VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH ARE HEREBY ACKNOWLEDGED, and in order to secure the payment of the Debt, including, but not limited to, the Loan in the principal amount of $175,000,000.00, and performance of the Other Obligations, Borrower does hereby irrevocably GRANT, BARGAIN, SELL, PLEDGE, ASSIGN, WARRANT, TRANSFER AND CONVEY to Lender and its successors and assigns, WITH POWER OF SALE and right of entry and possession, for the use and benefit of Lender, all of Borrower's interest in and to the following property, rights, interests and estates now owned or hereafter acquired by Borrower (collectively, the "<u>Property</u>"):

(a) <u>Land</u>. The real property described in <u>Exhibit A</u> attached hereto and made a part hereof (the "<u>Land</u>");

(b) <u>Additional Land</u>. All additional lands, estates and development rights hereafter acquired by Borrower for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental deed to secure debt or otherwise, be expressly made subject to the lien and security title of this Deed to Secure Debt;

(c) <u>Improvements</u>. The buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land (collectively, the "<u>Improvements</u>");

(d) <u>Easements</u>. All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Land and/or the Improvements and the reversions and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Borrower of, in and to the Land and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(e) <u>Equipment</u>. All "equipment," as such term is defined in Article 9 of the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (as amended from time to time, the "<u>Uniform Commercial Code</u>"), now owned or hereafter acquired by Borrower, which is used at or in connection with the Improvements and/or the Land or is located thereon or therein (including, but not limited to, all

machinery, equipment, furnishings, and electronic data-processing and other office equipment now owned or hereafter acquired by Borrower and any and all additions, substitutions and replacements of any of the foregoing), together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto (collectively, the "Equipment"). Notwithstanding the foregoing, "Equipment" shall not include any property belonging to tenants under Leases (as hereinafter defined) except to the extent that Borrower shall have any right or interest therein;

(f) Fixtures. All Equipment now owned, or the ownership of which is hereafter acquired, by Borrower which is so related to the Land and/or the Improvements forming part of the Property that it is deemed fixtures or real property under the law of the particular state in which the Equipment is located, including, without limitation, all building or construction materials intended for construction, reconstruction, alteration or repair of or installation on the Property, construction equipment, appliances, machinery, plant equipment, fittings, apparatuses, fixtures and other items now or hereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements and/or the Land, including, but not limited to, engines, devices for the operation of pumps, pipes, plumbing, cleaning, call and sprinkler systems, fire extinguishing apparatuses and equipment, heating, ventilating, laundry, incinerating, electrical, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, pollution control equipment, security systems, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary sewer facilities, utility lines and equipment (whether owned individually or jointly with others, and, if owned jointly, to the extent of Borrower's interest therein) and all other utilities whether or not situated in easements, all water tanks, water supply, water power sites, fuel stations, fuel tanks, fuel supply, and all other structures, together with all accessions, appurtenances, additions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof (collectively, the "Fixtures"). Notwithstanding the foregoing, "Fixtures" shall not include any property which tenants are entitled to remove pursuant to Leases, except to the extent that Borrower shall have any right or interest therein;

(g) Personal Property. All furniture, furnishings, objects of art, machinery, goods, tools, supplies, appliances, general intangibles, contract rights, accounts, accounts receivable, open accounts, franchises, licenses (including all trademark and servicemark licenses), certificates and permits, inventory and all other personal property of any kind or character whatsoever as defined in and subject to the provisions of the Uniform Commercial Code, whether tangible or intangible, other than Fixtures, which are now or hereafter owned by Borrower, including, but not limited to, beds, bureaus, chiffoniers, chests, chairs, desks, lamps, mirrors, bookcases, tables, rugs, carpeting, drapes, draperies, curtains, shades, venetian blinds, screens, paintings, hangings, pictures, divans, couches, luggage carts, luggage racks, stools, sofas, chinaware, linens, pillows, blankets, glassware, food carts, cookware, dry cleaning facilities, dining room wagons, keys or other entry systems, bars, bar fixtures, liquor and other drink dispensers, icemakers, radios, television sets, intercom and paging equipment, electric and electronic equipment, dictating equipment, private telephone systems, medical equipment, potted plants, heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers,

incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers and other customary hotel equipment, together with all accessories, replacements and substitutions thereto or therefor and the proceeds thereof (collectively, the "Personal Property"), and the right, title and interest of Borrower in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, superior in lien to the lien of this Deed to Secure Debt and all proceeds and products of any of the above;

(h)     Leases and Rents.  All leases, subleases and sub-subleases, lettings, licenses, concessions, franchise and license agreements, and other agreements (whether written or oral and whether now or hereafter in effect) pursuant to which any Tenant (as defined in the Loan Agreement) is granted a possessory interest in, or right to use or occupy all or any portion of any space in the Land and/or the Improvements, and every modification, amendment or other agreement relating to such leases, subleases, subsubleases or other agreements, and every guarantee of the performance and observance of the covenants, conditions and agreements to be performed and observed by the other party thereto, heretofore or hereafter entered into (collectively, the "Leases"), whether before or after the filing by or against Borrower of any petition for relief under 11 U.S.C. §101 *et seq.*, as the same may be amended from time to time (the "Bankruptcy Code"), and all right, title and interest of Borrower, its successors and assigns, therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the tenants of their obligations thereunder and all rents (including, without limitation, percentage rents), rent equivalents, moneys payable as damages (including payments by reason of the rejection of a Lease in a Bankruptcy Action) or in lieu of rent or rent equivalents, additional rents, revenues, royalties (including all oil and gas or other mineral royalties and bonuses), income, fees, receivables, receipts, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other payments and consideration of whatever form or nature received by or paid to or for the account of or benefit of Borrower from any and all sources arising from or attributable to the Land and/or the Improvements, including, without limitation, all revenues and credit card receipts from telephone services, laundry, vending and television, all revenues and credit card receipts collected from guest rooms, restaurants, bars, meeting rooms, banquet rooms and recreational facilities, health club membership fees, food and beverage wholesale and retail sales, vending machine sales, services charges and all receivables, customer obligations, installment payment obligations and other obligations now existing or hereafter arising or created out of the sale, lease, sublease, license, concession or other grant of the right of the use and occupancy of property or rendering of services by Borrower or any operator or manager of the hotel or commercial space located in the Improvements, or any of their respective agents or employees (including without limitation, from the rental of any office space, retail space, guest rooms or other space, halls, stores and offices, and deposits securing reservations of such space), and proceeds, if any, from business interruption or other loss of income insurance, whether paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code (collectively, the "Rents"), and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt and the performance of the Other Obligations;

(i)    <u>Condemnation Awards</u>. All Awards which may heretofore and hereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including, but not limited to, any transfer made in lieu of or in anticipation of the exercise of such right) or for a change of grade, or for any other injury to or decrease in the value of the Property;

(j)    <u>Insurance Proceeds</u>. All Insurance Proceeds in respect of the Property under any Policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, in connection with a Casualty to the Property;

(k)    <u>Tax Certiorari</u>. All refunds, rebates or credits in connection with any reduction in Taxes or Other Charges charged against the Property;

(l)    <u>Conversion</u>. All proceeds of the conversion, voluntary or involuntary, of any of the foregoing, including, without limitation, Insurance Proceeds and Awards, into cash or liquidation claims;

(m)    <u>Rights</u>. The right, in the name and on behalf of Borrower, to commence any action or proceeding to protect the interest of Lender in the Property and to appear in and, while an Event of Default (as hereinafter defined) remains uncured, defend any action or proceeding brought with respect to the Property;

(n)    <u>Agreements</u>. All agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Improvements and/or the Land or any part thereof, respecting any business or activity conducted in the Improvements and/or on the Land or any part thereof and all right, title and interest of Borrower therein and thereunder, including, without limitation, the right, upon the happening of any default hereunder, to receive and collect any sums payable to Borrower thereunder;

(o)    <u>Trademarks</u>. All trade names, trademarks, servicemarks, logos, copyrights, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Property;

(p)    <u>Accounts</u>. All reserves, escrows and deposit accounts maintained by Borrower with respect to the Property, including, without limitation, all accounts established or maintained pursuant to the Loan Agreement or any other Loan Document, together with all deposits or wire transfers made to such accounts and all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments and other property held therein from time to time and all proceeds, products, distributions, dividends and/or substitutions thereon and thereof;

(q)    <u>Credit Card Receipts</u>. All accounts and accounts receivable, including all present and future rights to payment from any consumer credit or charge card organization or entity (such as those organizations which sponsor or administer the American Express, Carte Blanche, Discover Card, Diners Club, Visa, Master Card and similar charge and credit cards)

arising out of the leasing and operation of, or the business conducted at or in relation to, any of the Property;

(r)    <u>Hotel Revenue</u>.  All revenue and income received by or on behalf of Borrower or Manager resulting from the operation of the Property as a hotel, including all sums (i) paid by customers for the use of hotel rooms located within the Property, (ii) derived from food and beverage operations located within the Property (including, without limitation, from the sale of alcoholic beverages), (iii) generated by other hotel operations, including without limitation any parking, convention, sports, banquet facilities and recreational facilities and (iv) business interruption insurance proceeds;

(s)    <u>Hotel Accounts</u>.  All deposit, operating or other accounts including the entire balance therein (now or hereafter existing) maintained by or on behalf of Borrower or Manager (to the extent related to Manager's management and operation of the Property) with any other banking or financial institution, and all money, instruments, securities, documents, chattel paper, credits, demands, and any other property, rights, or interests of Borrower or Manager related to the Property which at any time shall come into the possession, custody or control of any other banking or financial institution;

(t)    <u>Hotel Agreements</u>.  All agreements now or hereafter entered into by or on behalf of Borrower with any party with respect to the management, franchising, leasing, brokerage, promotional, marketing or consulting services rendered or to be rendered, with respect to the management, franchising, leasing, promotion, marketing, operation or sale of any portion of the Property, including the Management Agreement and the Franchise Agreement, and the proceeds thereof (including distributions and other payments thereunder) and any license agreements;

(u)    <u>Hotel Books</u>.  All books, records and computer software in which Borrower has an ownership or licensing interest concerning any of the foregoing;

(v)    <u>Rate Cap</u>.  All of Borrower's interest in that certain Rate Cap (as defined in the Loan Agreement) entered into on or about the date hereof, as amended, modified, extended or supplemented from time to time, together with the confirmation thereof and any other interest rate protection agreement entered into by Borrower;

(w)    <u>Uniform Commercial Code Property</u>.  The Rate Cap and all "accounts", "chattel paper", "general intangibles" and "investment property" (as such terms are defined in the Uniform Commercial Code) constituting or relating to any of the foregoing;

(x)    <u>Interest Rate Cap Agreement</u>.  Any and all contracts, instruments and agreements, now existing or hereafter arising, in connection with any interest rate protection or hedge agreement, including any interest rate future, option, swap, cap or collar agreement in connection with the Loan, including without limitation, the Interest Rate Cap Agreement (as defined in the Collateral Assignment of Interest Rate Cap (as defined in the Loan Agreement)) and any and all rights that Borrower may now or hereafter have to any and all payments, disbursements, distributions or proceeds owing, payable or required to be delivered to Borrower on account of the Interest Rate Cap Agreement with respect to the period commencing on the

date hereof and ending upon payment in full and satisfaction of the Debt, and all proceeds of any or all of the foregoing and further including any and all rights that Borrower may now or hereafter have to terminate the Interest Rate Cap Agreement;

(y) <u>Management Agreement</u>. The Management Agreement;

(z) <u>Licenses and Permits</u>. All permits, license agreements, operating contracts, licenses (including liquor licenses to the extent assignable by Borrower) and all management, service, supply and maintenance contracts and agreements, and any other agreements, permits or contracts of any nature whatsoever now or hereafter obtained or entered into by Borrower with respect to the ownership, operation, maintenance and administration of the Property;

(aa) <u>Proceeds</u>. All products and proceeds of any of the foregoing; and

(bb) <u>Other Rights</u>. Any and all other rights of Borrower in and to the items set forth in Subsections (a) through (aa) above.

AND, without limiting any of the other provisions of this Deed to Secure Debt, to the extent permitted by applicable law, Borrower expressly grants to Lender, as secured party, a security interest in the portion of the Property which is or may be subject to the provisions of the Uniform Commercial Code which are applicable to secured transactions; it being understood and agreed that the Improvements and the Fixtures are part and parcel of the Land (the Land, the Improvements and the Fixtures being collectively referred to herein as the "<u>Real Property</u>") appropriated to the use thereof and, whether affixed or annexed to the Land or not, shall for the purposes of this Deed to Secure Debt be deemed conclusively to be real estate and conveyed hereby.

Section 1.2 <u>Assignment of Leases and Rents</u>. Borrower hereby absolutely and unconditionally assigns to Lender all of Borrower's right, title and interest in and to all current and future Leases and Rents; it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Nevertheless, subject to the terms of the Loan Agreement and <u>Section 7.2(h)</u> of this Deed to Secure Debt, prior to the occurrence of an Event of Default and upon written waiver thereof by Lender, Lender grants to Borrower a revocable license to collect, receive, use and enjoy the Rents. Borrower shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums.

Section 1.3 <u>Security Agreement</u>. This Deed to Secure Debt is both a real property deed to secure debt and a "security agreement" within the meaning of the Uniform Commercial Code. The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Property. By executing and delivering this Deed to Secure Debt, Borrower hereby grants to Lender, as security for the Obligations (as hereinafter defined), a security interest in the Fixtures, the Equipment, the Personal Property and the other property constituting the Property to the full extent that the Fixtures, the Equipment, the Personal Property and such other property may be subject to the Uniform Commercial Code (said portion of the Property so subject to the Uniform Commercial Code being called the "<u>Collateral</u>"). If an Event of Default shall occur and be continuing,

Lender, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Lender after the occurrence and during the continuance of an Event of Default, Borrower shall, at its expense, assemble the Collateral and make it available to Lender at a convenient place (at the Land if tangible property) reasonably acceptable to Lender. Borrower shall pay to Lender on demand any and all expenses, including, without limitation, reasonable attorneys' fees and costs, incurred or paid by Lender in protecting its interests in the Collateral and in enforcing its rights hereunder with respect to the Collateral after the occurrence and during the continuance of an Event of Default. Any notice of sale, disposition or other intended action by Lender with respect to the Collateral sent to Borrower in accordance with the provisions hereof at least ten (10) days prior to such action, shall, except as otherwise provided by applicable law, constitute reasonable notice to Borrower. The proceeds of any disposition of the Collateral, or any part thereof, may, except as otherwise required by applicable law, be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper. Borrower's (debtor's) principal place of business is as set forth on the first page hereof and the address of Lender (secured party) is as set forth on the first page hereof. Borrower hereby authorizes Lender to file any and all financing statements, amendments to financing statements and extensions of financing statements pertaining to the Collateral.

Section 1.4     Fixture Filing. Certain of the Property is or will become "fixtures" (as that term is defined in the Uniform Commercial Code) on the Land, and Borrower hereby authorizes Lender to record a financing statement in the real estate records of the county wherein such fixtures are situated (naming Borrower as the Debtor and Lender as the Secured Party) filed as a fixture filing in accordance with the applicable provisions of the Uniform Commercial Code upon such portion of the Property that is or may become fixtures.

Section 1.5     Pledges of Monies Held. Borrower hereby pledges to Lender any and all monies now or hereafter held by Lender or on behalf of Lender in connection with the Loan, including, without limitation, any sums deposited in the applicable Lockbox Account, the Reserve Funds and Net Proceeds, as additional security for the Obligations until expended or applied as provided in this Deed to Secure Debt.

## CONDITIONS TO GRANT

TO HAVE AND TO HOLD the Property and all rights, parts, members and appurtenances thereof, to the use, benefit and behalf of Lender, IN FEE SIMPLE, forever; and Borrower covenants that Borrower is lawfully seized and possessed of the Property as aforesaid, and has good right to convey the same, that the same is unencumbered except for the Permitted Encumbrances, and that Borrower does hereby bind itself, its successors and assigns, to WARRANT AND FOREVER DEFEND the title to the Property unto Lender and its successors and assigns, forever;

This Deed to Secure Debt is intended to (i) constitute a security agreement under the Uniform Commercial Code, and (ii) to operate and be construed as a deed passing the title to the Property to Lender and is made under the laws of the State of Georgia (O.C.G.A. 44-14-60 through 44-14-85) relating to deeds to secure debt, and is not a mortgage, and is given to secure payment of the Debt to Lender and performance of the Other Obligations at the time and in the manner provided in the Note, the Loan Agreement, this Deed to Secure Debt and the other Loan Documents.

PROVIDED, HOWEVER, these presents are upon the express condition that, if Borrower shall well and truly pay to Lender the Debt at the time and in the manner provided in the Note, the Loan Agreement, this Deed to Secure Debt and the other Loan Documents, this Deed to Secure Debt shall be cancelled and surrendered and Lender shall reconvey the Property; provided, however, that Borrower's obligations to indemnify and hold harmless Lender pursuant to the provisions hereof shall survive any such payment or reconveyance.

## ARTICLE 2

## DEBT AND OBLIGATIONS SECURED

Section 2.1     Debt.  This Deed to Secure Debt and the conveyance, grants, assignments and transfers made in Article 1 hereof are given for the purpose of securing the Debt.

Section 2.2     Other Obligations.  This Deed to Secure Debt and the grants, assignments and transfers made in Article 1 hereof are also given for the purpose of securing the performance of the following (the "Other Obligations"): (a) all other obligations of Borrower contained herein; (b) each obligation of Borrower and each Other Borrower contained in the Loan Agreement and any other Loan Document; and (c) each obligation of Borrower and each Other Borrower contained in any renewal, extension, amendment, modification, consolidation, change of, or substitution or replacement for, all or any part of the Note, the Loan Agreement or any other Loan Document.

Section 2.3     Debt and Other Obligations.  Borrower's and Other Borrowers' obligations for the payment of the Debt and the performance of the Other Obligations shall be referred to collectively herein as the "Obligations."

## ARTICLE 3

## BORROWER COVENANTS

Borrower covenants and agrees that:

Section 3.1     Payment of Debt.  Borrower and Other Borrowers will pay the Debt at the time and in the manner provided in the Loan Agreement, the Note, this Deed to Secure Debt and the other Loan Documents.

Section 3.2    Incorporation by Reference.    All the covenants, conditions and agreements contained in (a) the Loan Agreement, (b) the Note, and (c) all of the other Loan Documents, are hereby made a part of this Deed to Secure Debt to the same extent and with the same force as if fully set forth herein.

Section 3.3    Insurance.    Borrower shall obtain and maintain, or cause to be maintained, in full force and effect at all times insurance with respect to Borrower and the Property as required pursuant to the Loan Agreement.

Section 3.4    Maintenance of the Property.    Borrower shall cause the Property to be maintained in a good and safe condition and repair.  None of the Improvements, the Fixtures, the Equipment or the Personal Property shall be removed, demolished or materially altered (except for normal replacement of the Fixtures, the Equipment or the Personal Property and refurbishment of the Improvements as permitted by the terms of the Loan Agreement) without the prior written consent of Lender or as otherwise permitted pursuant to the Loan Agreement. To the extent required pursuant to the provisions of the Loan Agreement, Borrower shall promptly repair, replace or rebuild any part of the Property which may be destroyed by any Casualty or become damaged, worn or dilapidated or which may be affected by any Condemnation, and shall complete and pay for any structure at any time in the process of construction or repair on the Land.

Section 3.5    Waste.    Borrower shall not commit or suffer any waste of the Property or make any change in the use of the Property which will in any way materially increase the risk of fire or other hazard arising out of the operation of the Property, or take any action that might invalidate or allow the cancellation of any Policy, or do or permit to be done thereon anything that may in any way materially impair the value of the Property or the security of this Deed to Secure Debt.  Borrower will not, without the prior written consent of Lender, permit any drilling or exploration for or extraction, removal, or production of any minerals from the surface or the subsurface of the Land, regardless of the depth thereof or the method of mining or extraction thereof.

Section 3.6    Payment for Labor and Materials.

(a)    Subject to Section 3.6(b) hereof, Borrower will (i) promptly pay when due all bills and costs for labor, materials and specifically fabricated materials ("Labor and Material Costs") incurred in connection with the Property, (ii) never permit to exist beyond the due date thereof in respect of the Property, or any part thereof, any Lien or security interest, even though inferior to the Liens and security interests created hereby and by the other Loan Documents, and (iii) never permit to be created or exist in respect of the Property or any part thereof any other or additional Lien or security interest other than the Liens or security interests created hereby and by the other Loan Documents except for the Permitted Encumbrances.

(b)    After prior written notice to Lender, Borrower, at its own expense, may contest by appropriate legal proceeding, promptly initiated and conducted in good faith and with due diligence, the amount, validity or application in whole or in part of any of the Labor and Material Costs, provided that: (i) no Event of Default has occurred and is continuing under the Loan Agreement, the Note, this Deed to Secure Debt or any of the other Loan Documents;

(ii) Borrower is permitted to do so under the provisions of any other deed to secure debt affecting the Property; (iii) such proceeding shall suspend the collection of the Labor and Material Costs from Borrower and from the Property or Borrower shall have paid all of the Labor and Material Costs under protest; (iv) such proceeding shall be permitted under and be conducted in accordance with the provisions of any other instrument to which Borrower is subject and shall not constitute a default thereunder; (v) such proceeding shall be conducted in accordance with all applicable statutes, laws and ordinances; (vi) neither the Property nor any part thereof or any interest therein will be in danger of being sold, forfeited, terminated, canceled or lost as a result of such contest; (vii) Borrower shall, upon final determination thereof, promptly pay any such Labor and Material Costs determined to be valid or applicable; and (viii) Borrower either shall have bonded over the liens securing such Labor and Material Costs or shall have furnished such security as may be required .in the proceeding, or as may be reasonably requested by Lender, to insure the payment of any contested Labor and Material Costs, together with all interest and penalties thereon.

Section 3.7 <u>Performance of Other Agreements</u>. Borrower shall observe and perform each and every term, covenant and provision to be observed or performed by Borrower pursuant to the Loan Agreement, any other Loan Document and any other agreement or recorded instrument affecting or pertaining to the Property and any amendments, modifications or changes thereto.

Section 3.8 <u>Change of Name, Identity or Structure</u>. Borrower shall not change Borrower's name, identity (including its trade name or names) or, if not an individual, Borrower's corporate, partnership, company or other structure without notifying Lender of such change in writing at least thirty (30) days prior to the effective date of such change and, in the case of a change in Borrower's structure, without first obtaining the prior written consent of Lender, which consent shall not be unreasonably withheld, except as may otherwise be permitted pursuant to Section 6.2 of the Loan Agreement. Further, Borrower shall promptly notify Lender in writing of any change in its organizational identification number or, if Borrower does not now have an organizational identification number and later obtains one, Borrower shall promptly notify Lender in writing of such organizational identification number. Borrower shall execute and deliver to Lender, prior to or contemporaneously with the effective date of any change referenced above, any financing statement or financing statement change required by Lender to establish or maintain the validity, perfection and priority of the security interests granted herein. At the request of Lender from time to time, Borrower shall execute a certificate in form satisfactory to Lender listing the trade names under which Borrower is operating or intends to operate the Property, and representing and warranting that Borrower does business under no other trade name with respect to the Property.

Section 3.9 <u>Title</u>. Borrower represents and warrants to Lender that (a) Borrower has good, marketable and insurable fee simple title to the real property comprising part of the Property and good title to the balance of the Property, in each case free and clear of all Liens whatsoever except the Permitted Encumbrances, such other Liens as are permitted pursuant to the Loan Documents and the Liens created by the Loan Documents; (b) the Permitted Encumbrances in the aggregate do not materially and adversely affect the value, operation or use of the Property or Borrower's ability to repay the Loan; (c) this Deed to Secure Debt, when properly recorded in the appropriate records, together with any Uniform Commercial Code

financing statements required to be filed in connection therewith, will create (i) a valid, perfected first priority Lien on the Property, subject only to the Permitted Encumbrances and the Liens created by the Loan Documents and (ii) perfected security interests in and to, and perfected collateral assignments of, all personalty (including the Leases), all in accordance with the terms thereof, in each case subject only to any applicable Permitted Encumbrances, such other Liens as are permitted pursuant to the Loan Documents and the Liens created by the Loan Documents; and (d) there are no claims for payment for work, labor or materials affecting the Property which are past due and are or may become a Lien prior to, or of equal priority with, the Liens created by the Loan Documents unless such claims for payments are being contested in accordance with the terms and conditions of this Deed to Secure Debt. The foregoing representations and warranties shall remain true and correct throughout the term of the Loan.

Section 3.10    Release of Property. Borrower shall not be entitled to a release of any portion of the Property from the lien of this Deed to Secure Debt, except in accordance with the terms and conditions of the Loan Agreement.

## ARTICLE 4

## OBLIGATIONS AND RELIANCES

Section 4.1    Relationship of Borrower and Lender.  The relationship between Borrower and Lender is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with Borrower, and no term or condition of the Loan Agreement, the Note, this Deed to Secure Debt or any other Loan Document shall be construed so as to deem the relationship between Borrower and Lender to be other than that of debtor and creditor.

Section 4.2    No Reliance on Lender.  The general partners, members, principals and (if Borrower is a trust) beneficial owners of Borrower, as applicable, are experienced in the ownership and operation of properties similar to the Property, and Borrower and Lender are relying solely upon such expertise and business plan in connection with the ownership and operation of the Property. Borrower is not relying on Lender's expertise, business acumen or advice in connection with the Property.

Section 4.3    No Lender Obligations.

(a)    Notwithstanding the provisions of Subsections 1.1(h) and (n) or Section 1.2 hereof, Lender is not undertaking the performance of (i) any obligations under any of the Leases or (ii) any obligations with respect to any other agreements, contracts, certificates, instruments, franchises, permits, trademarks, licenses or other documents.

(b)    By accepting or approving anything required to be observed, performed or fulfilled or to be given to Lender pursuant to this Deed to Secure Debt, the Loan Agreement, the Note or the other Loan Documents, including, without limitation, any Officer's Certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or Policy, Lender shall not be deemed to have warranted, consented to, or affirmed the sufficiency, legality or effectiveness of the same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect thereto by Lender.

Section 4.4    Reliance.    Borrower recognizes and acknowledges that: (a) in accepting this Deed to Secure Debt and the other Loan Documents, Lender is expressly and primarily relying on the truth and accuracy of the warranties and representations set forth in Article IV of the Loan Agreement without any obligation to investigate the Property and notwithstanding any investigation of the Property by Lender; (b) such reliance existed on the part of Lender prior to the date hereof; (c) the warranties and representations are a material inducement to Lender in making the Loan; and (d) Lender would not be willing to make the Loan and accept this Deed to Secure Debt in the absence of the warranties and representations as set forth in Article IV of the Loan Agreement.

Section 4.5    Environmental Hazards.    Borrower has provided representations and warranties regarding environmental matters set forth in Section 12.1 of the Loan Agreement and shall comply with the covenants regarding environmental matters and access to the Property set forth in Section 12.2 and Section 12.3 of the Loan Agreement.

## ARTICLE 5

## FURTHER ASSURANCES

Section 5.1    Recording of Deed to Secure Debt, Etc.    Borrower forthwith upon the execution and delivery of this Deed to Secure Debt and thereafter, from time to time, will cause this Deed to Secure Debt and any of the other Loan Documents creating a Lien or security interest or evidencing the Lien hereof upon the Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and to fully protect and perfect the Lien or security interest hereof upon, and the interest of Lender in, the Property. Borrower will pay all taxes, filing, registration or recording fees and all expenses incident to the preparation, execution, acknowledgment and/or recording of the Note, this Deed to Secure Debt, the other Loan Documents, any note, deed to secure debt supplemental hereto, any other security instrument with respect to the Property and any instrument of further assurance, and any modification or amendment of any of the foregoing documents, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Deed to Secure Debt, any deed to secure debt supplemental hereto, any other security instrument with respect to the Property or any instrument of further assurance, and any modification or amendment of any of the foregoing documents, except where prohibited by law so to do.

Section 5.2    Further Acts, Etc.    Borrower will, at the sole cost and expense of Borrower, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds to secure debt, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, reasonably require, for the better assuring, conveying, assigning, transferring, and confirming unto Lender the property and rights hereby deeded, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Deed to Secure Debt or for filing, registering or recording this Deed to Secure Debt, or for complying with all Legal Requirements. Borrower, on demand, will

execute and deliver, and in the event Borrower shall fail to so execute and deliver, hereby authorizes Lender to execute in the name of Borrower or without the signature of Borrower to the extent Lender may lawfully do so, one or more financing statements (including, without limitation, initial financing statements and amendments thereto and continuation statements) to evidence more effectively the security interest of Lender in the Property. Borrower grants to Lender an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Lender at law and in equity after the occurrence of an Event of Default, including, without limitation, such rights and remedies available to Lender pursuant to this <u>Section 5.2</u>.

Section 5.3     <u>Changes in Tax, Debt, Credit and Documentary Stamp Laws</u>.

(a)     If any law is enacted or adopted or amended after the date of this Deed to Secure Debt which deducts the Debt from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Lender's interest in the Property, Borrower will pay the tax, with interest and penalties thereon, if any. If Lender is advised by counsel chosen by it that the payment of tax by Borrower would be unlawful or taxable to Lender, unenforceable or provide the basis for a defense of usury, then Lender shall have the option, by written notice of not less than one hundred twenty (120) days, to declare the Debt immediately due and payable.

(b)     Borrower will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Property, or any part thereof, for real estate tax purposes by reason of this Deed to Secure Debt or the Debt. If such claim, credit or deduction shall be required by law, then Lender shall have the option, by written notice of not less than one hundred twenty (120) days, to declare the Debt immediately due and payable.

(c)     If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note, this Deed to Secure Debt, or any of the other Loan Documents, or shall impose any other tax or charge on the same, Borrower will pay for the same, with interest and penalties thereon, if any.

(d)     So long as no Event of Default has occurred and is continuing, Borrower shall not be obligated to pay any prepayment fees or penalties in connection with any prepayment of the Loan made as a result of Lender declaring the Debt immediately due and payable pursuant to the terms of this <u>Section 5.3</u>.

Section 5.4     <u>Severing of Deed to Secure Debt</u>. The provisions of Section 11.2(c) of the Loan Agreement are hereby incorporated by reference into this Deed to Secure Debt to the same extent and with the same force as if fully set forth herein.

Section 5.5     <u>Replacement Documents</u>. Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of the Note or any other Loan Document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note or a replacement of such other Loan Document, Borrower will

issue and deliver to Lender, in lieu thereof, a replacement Note or a replacement of such other Loan Document, dated the date of such lost, stolen, destroyed or mutilated Note or other Loan Document in the same principal amount thereof and otherwise of like tenor. In the event of the loss, theft or destruction of the Note, Lender shall deliver to Borrower a commercially reasonable indemnification agreement indemnifying Borrower from and against all claims, liabilities and losses arising out of or resulting from the loss, theft or destruction of the Note.

## ARTICLE 6

## DUE ON SALE/ ENCUMBRANCE

Section 6.1   Lender Reliance.   Borrower acknowledges that Lender has examined and relied on the experience of Borrower and its general partners, members, principals and (if Borrower is a trust) beneficial owners, as applicable, in owning and operating properties such as the Property in agreeing to make the Loan, and will continue to rely on Borrower's ownership of the Property as a means of maintaining the value of the Property as security for the repayment of the Debt and the performance of the Other Obligations. Borrower acknowledges that Lender has a valid interest in maintaining the value of the Property so as to ensure that, should an Event of Default exist, Lender can recover the Debt by a sale of the Property.

Section 6.2   No Sale/Transfer. Neither Borrower nor any Restricted Party shall Transfer the Property or any part thereof or any interest therein, or permit or suffer the Property or any part thereof or any interest therein to be Transferred, other than as expressly permitted pursuant to the terms of the Loan Agreement.

## ARTICLE 7

## RIGHTS AND REMEDIES UPON DEFAULT

Section 7.1   Events of Default. The occurrence of an "Event of Default" under the Loan Agreement shall be an "Event of Default" under this Deed to Secure Debt.

Section 7.2   Remedies.   Unless waived by Lender in writing, upon the occurrence of an Event of Default, all or any one or more of the rights, powers, privileges and other remedies available to Lender against Borrower under this Deed to Secure Debt or at law or in equity may be exercised by Lender at any time and from time to time. Any such actions taken by Lender shall be cumulative and concurrent and may be pursued independently, singularly, successively, together or otherwise, at such time and in such order as Lender may determine in its sole discretion, to the fullest extent permitted by law, without impairing or otherwise affecting the other rights and remedies of Lender, including, but not limited to, the following actions:

(a)   declare the entire unpaid Debt to be immediately due and payable;

(b)   institute proceedings for the complete foreclosure of this Deed to Secure Debt under any applicable provision of law, in which case the Property, or any part thereof or any interest therein, may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

-15-

(c)     with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Deed to Secure Debt for the portion of the Debt then due and payable, subject to the continuing Lien and security interest of this Deed to Secure Debt for the balance of the Debt and the Other Obligations not then due, unimpaired and without loss of priority;

(d)     sell for cash or upon credit the Property or any part thereof or any interest therein and all estate, claim, demand, right, title and interest of Borrower therein and rights of redemption thereof, pursuant to power of sale or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law; and, without limiting the foregoing:

(i)     in connection with any sale or sales hereunder, Lender shall be entitled to elect to treat any of the Property which consists of (x) a right in action, or (y) property that can be severed from the Real Property covered hereby, or (z) any improvements (without causing structural damage thereto), as if the same were personal property, and dispose of the same in accordance with applicable law, separate and apart from the sale of the Real Property.  Where the Property consists of Real Property, Personal Property, Equipment or Fixtures, whether or not such Personal Property or Equipment is located on or within the Real Property, Lender shall be entitled to elect to exercise its rights and remedies against any or all of the Real Property, Personal Property, Equipment and Fixtures in such order and manner as is now or hereafter permitted by applicable law;

(ii)     Lender shall be entitled to elect to proceed against any or all of the Real Property, the Personal Property, the Equipment and the Fixtures in any manner permitted under applicable law; and if Lender so elects pursuant to applicable law, the power of sale herein granted shall be exercisable with respect to all or any of the Real Property, the Personal Property, the Equipment and the Fixtures covered hereby, as designated by Lender, and Lender is hereby authorized and empowered to conduct any such sale of any Real Property, Personal Property, Equipment and Fixtures in accordance with the procedures applicable to the Real Property;

(iii)     should Lender elect to sell any portion of the Property which is Real Property or which is Personal Property, Equipment or Fixtures that Lender has elected under applicable law to sell together with the Real Property in accordance with the laws governing a sale of the Real Property, Lender shall give such notice of the occurrence of an Event of Default, if any, and its election to sell such portion of the Property as may then be required by law.  Thereafter, upon the giving of such notice of sale and the expiration of any required time period as may then be required by law, subject to the terms hereof and of the other Loan Documents, and without the necessity of any demand on Borrower, Lender, at the time and place specified in the notice of sale, shall sell such Real Property or part thereof at public auction to the highest bidder for cash in lawful money of the United States.  Lender may from time to time postpone any sale hereunder by public announcement thereof at the time and place noticed for any such sale;

(iv)     if the Property consists of several lots, parcels or items of property, Lender shall, subject to applicable law, (A) designate the order in which such lots, parcels or

items shall be offered for sale or sold, or (B) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales, or in any other manner Lender designates. Any Person, including Borrower or Lender, may purchase at any sale hereunder. Should Lender desire that more than one sale or other disposition of the Property be conducted, Lender shall, subject to applicable law, cause such sales or dispositions to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Lender may designate, and no such sale shall terminate or otherwise affect the lien of this Deed to Secure Debt on any part of the Property not sold until all the Obligations have been satisfied in full. In the event Lender elects to dispose of the Property through more than one sale, except as otherwise provided by applicable law, Borrower agrees to pay the costs and expenses of each such sale and of any judicial proceedings wherein such sale may be made; and

(v)     upon any such foreclosure sale, Lender may, if permitted by law, after allowing for the portion of the total purchase price required to be paid in cash and for the costs and expenses of the sale, compensation and other charges, in paying the purchase price, apply any portion of or all sums due to Lender under the obligations secured by this Deed to Secure Debt, in lieu of cash, to the amount which shall, upon distribution of the net proceeds of such sale, be payable thereon;

(e)     exercise the power of sale contained herein and, in furtherance thereof, execute a written notice of the subject Event of Default and of the election to cause the Property to be sold to satisfy the Obligations secured hereby. Lender shall give and record such notice as the law then requires as a condition precedent to a sale under power. When the minimum period of time required by law after such notice has elapsed, Lender, without notice to or demand upon Borrower except as otherwise may be required by law, shall sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels or through one or more successive sales and in such order as it or Lender may determine, at public auction to the highest bidder for cash, in lawful money of the United States, or other form of payment acceptable to Lender, payable at the time of sale. Borrower shall have no right to direct the order in which the Property is sold. Lender may, in its sole discretion, designate the order in which the Property is offered for sale or sold and determine if the Property shall be sold through a single sale or through two or more successive sales, or in any other manner Lender deems to be in its best interests. If Lender elects more than one sale or other disposition of the Property, Lender may at its option cause the same to be conducted simultaneously or in such order and at such times as Lender may deem to be in its best interests, and no such sale shall terminate or otherwise affect the lien of this Deed to Secure Debt on any part of the Property not then sold until all Debt secured hereby has been fully paid. If Lender elects to dispose of the Property through more than one sale, Borrower shall pay the costs and expenses of each such sale and of any judicial proceedings where the same may be undertaken. Lender may postpone any such sale by public announcement at the time and place fixed by the notice of sale, and may thereafter continue such postponement by like announcements at the time and place fixed by the preceding postponement, at Lender's direction and without necessity of additional notices of sale. Lender shall deliver to the purchaser at such sale a deed conveying the Property or portion thereof so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Borrower or Lender, may purchase at such sale. Borrower waives all right to require a