marshalling of assets by Lender; and Borrower waives the right to require Lender to resort first to any portion of the Property retained by Borrower before resorting to any other portion of the Property which may have been transferred or conveyed subject hereto, whether such resort to security is undertaken by non-judicial sale or through proceedings in judicial foreclosure;

(f) institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note, in the Loan Agreement or in the other Loan Documents;

(g) recover judgment on the Note either before, during or after any proceedings for the enforcement of this Deed to Secure Debt or the other Loan Documents;

(h) apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any guarantor or indemnitor with respect to the Loan or any Person otherwise liable for the payment of the Debt or any part thereof, it being agreed that Lender shall be entitled to appointment of such receiver, trustee, liquidator or conservator as a matter of right;

(i) the license granted to Borrower under Section 1.2 hereof shall automatically be revoked and Lender may enter into or upon the Property, either personally or by its agents, nominees or attorneys, and dispossess Borrower and its agents and servants therefrom, without liability for trespass, damages or otherwise, and exclude Borrower and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto and Borrower agrees to surrender possession of the Property and of such books, records and accounts to Lender upon demand, and thereupon Lender may (i) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business thereat, (ii) complete any construction on the Property in such manner and form as Lender deems advisable, (iii) make alterations, additions, renewals, replacements and improvements to or on the Property, (iv) exercise all rights and powers of Borrower with respect to the Property, whether in the name of Borrower or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents of the Property and every part thereof, (v) require Borrower to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Property as may be occupied by Borrower, (vi) require Borrower to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise, and (vii) apply the receipts from the Property to the payment of the Debt and the performance of the Other Obligations, in such order, priority and proportions as Lender shall deem appropriate in its sole discretion after deducting therefrom all expenses (including, without limitation, reasonable attorneys' fees and costs) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, Other Charges, Insurance Premiums and other expenses in connection with the Property, as well as just and reasonable compensation for the services of Lender, its counsel, agents and employees;

(j) exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the

foregoing: (i) the right to take possession of the Fixtures, the Equipment and/or the Personal Property or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Fixtures, the Equipment and/or the Personal Property, and (ii) request Borrower at its sole cost and expense to assemble the Fixtures, the Equipment and/or the Personal Property and make it available to Lender at a convenient place acceptable to Lender. Any notice of sale, disposition or other intended action by Lender with respect to the Fixtures, the Equipment and/or the Personal Property sent to Borrower in accordance with the provisions hereof at least ten (10) days prior to such action, shall constitute commercially reasonable notice to Borrower;

(k) apply any sums then deposited or held in escrow or otherwise by or on behalf of Lender in accordance with the terms of the Loan Agreement, this Deed to Secure Debt or any other Loan Document to the payment of any or all of the following items in any order or amount as Lender determines in its sole discretion:

(i) Taxes and Other Charges;

(ii) Insurance Premiums;

(iii) interest on the unpaid principal balance of the Note;

(iv) amortization of the unpaid principal balance of the Note; and/or

(v) all other sums payable pursuant to the Note, the Loan Agreement, this Deed to Secure Debt and the other Loan Documents, including, without limitation, any Prepayment Premium, if applicable, and advances made by Lender pursuant to the terms of this Deed to Secure Debt or the Loan Agreement;

(l) pursue such other remedies as Lender may have under applicable law; and/or

(m) apply the undisbursed balance of any Net Proceeds Deficiency deposit, together with interest thereon, to the payment of the Debt in such order, priority and proportions as Lender shall deem to be appropriate in its sole and absolute discretion.

In the event of a sale, by foreclosure, power of sale or otherwise, of less than all of the Property, this Deed to Secure Debt shall continue as a Lien and security interest on the remaining portion of the Property unimpaired and without loss of priority. Notwithstanding the provisions of this Section to the contrary, if any Event of Default as described in Section 11.1(f) of the Loan Agreement shall occur, the entire unpaid Debt shall be automatically due and payable, without any further notice, demand or other action by Lender.

Section 7.3 **Application of Proceeds.** The purchase money, proceeds and avails of any disposition of the Property, or any part thereof or any interest therein, or any other sums collected by Lender pursuant to the Note, the Loan Agreement, this Deed to Secure Debt or the other Loan Documents, may be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper, to the extent consistent with applicable law.

Section 7.4 <u>Right to Cure Defaults</u>. Upon the occurrence and during the continuance of any Default or Event of Default, Lender may, but without any obligation to do so and without notice to or demand on Borrower and without releasing Borrower from any obligation hereunder, make any payment or do any act required of Borrower hereunder in such manner and to such extent as Lender may deem necessary to protect the security hereof. Lender is authorized to enter upon the Property for such purposes, or appear in, defend or bring any action or proceeding to protect its interest in the Property or to foreclose this Deed to Secure Debt or to collect the Debt, and the cost and expense thereof (including, without limitation, reasonable attorneys' fees and expenses to the extent permitted by law), with interest as provided in this <u>Section 7.4</u>, shall constitute a portion of the Debt and shall be due and payable to Lender upon demand. All such costs and expenses incurred by Lender in remedying any Default or Event of Default or in appearing in, defending or bringing any such action or proceeding, as hereinabove provided, shall bear interest at the Default Rate for the period beginning on the first day after notice from Lender that such cost or expense was incurred and continuing until the date of payment to Lender. All such costs and expenses incurred by Lender, together with interest thereon calculated at the Default Rate, shall be deemed to constitute a portion of the Debt and to be secured by this Deed to Secure Debt and the other Loan Documents and shall be immediately due and payable upon demand by Lender therefor.

Section 7.5 <u>Actions and Proceedings</u>. After the occurrence of an Event of Default, Lender has the right to bring any action or proceeding, in the name and on behalf of Borrower, which Lender, in its sole and absolute discretion, decides should be brought to protect its interest in the Property. Further, Lender has the right to appear in and, after the occurrence and during the continuance of an Event of Default, defend any action or proceeding brought with respect to the Property.

Section 7.6 <u>Recovery of Sums Required To Be Paid</u>. Lender shall have the right, from time to time, to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Lender thereafter to bring an action of foreclosure, or any other action, for any Event of Default by Borrower existing at the time such earlier action was commenced.

Section 7.7 <u>Other Rights, Etc</u>.

(a) The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Deed to Secure Debt. Borrower shall not be relieved of Borrower's obligations hereunder by reason of (i) the failure of Lender to comply with any request of Borrower or any guarantor or indemnitor with respect to the Loan to take any action to foreclose this Deed to Secure Debt or otherwise enforce any of the provisions hereof or of the Note or the other Loan Documents, (ii) the release, regardless of consideration, of the whole or any part of the Property, or of any Person liable for the Obligations or any portion thereof, or (iii) any agreement or stipulation by Lender extending the time of payment or otherwise modifying or supplementing the terms of the Note, the Loan Agreement, this Deed to Secure Debt or the other Loan Documents.

(b)  It is agreed that the risk of loss or damage to the Property is on Borrower, and Lender shall have no liability whatsoever for any decline in value of the Property, for failure to maintain the Policies, or for failure to determine whether insurance in force is adequate as to the amount of risks insured. Possession by Lender shall not be deemed an election of judicial relief if any such possession is requested or obtained with respect to any Property or collateral not in Lender's possession.

(c)  Lender may resort for the payment of the Debt and the performance of the Other Obligations to any other security held by Lender in such order and manner as Lender, in its sole discretion, may elect. Lender may take action to recover the Debt, or any portion thereof, or to enforce the Other Obligations or any covenant hereof without prejudice to the right of Lender thereafter to foreclose this Deed to Secure Debt. The rights of Lender under this Deed to Secure Debt shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Lender shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

Section 7.8  Right to Release Any Portion of the Property. Lender may release any portion of the Property for such consideration as Lender may require without, as to the remainder of the Property, in any way impairing or affecting the Lien or priority of this Deed to Secure Debt, or improving the position of any subordinate lienholder with respect thereto, except to the extent that the Debt shall have been reduced by the actual monetary consideration, if any, received by Lender for such release, and Lender may accept by assignment, pledge or otherwise any other property in place thereof as Lender may require without being accountable for so doing to any other lienholder. This Deed to Secure Debt shall continue as a Lien on and security interest in the remaining portion of the Property.

Section 7.9  Violation of Laws. If the Property is not in compliance with any material Legal Requirements, Lender may impose additional reasonable requirements upon Borrower in connection herewith, including, without limitation, monetary reserves or financial equivalents.

Section 7.10  Right of Entry. Borrower shall permit agents, representatives and employees of Lender to inspect the Property or any part thereof at reasonable hours upon reasonable advance notice (which may be given verbally); provided such inspections do not materially interfere with the use and operation of the Property.

# ARTICLE 8

## INDEMNIFICATION

Section 8.1  General Indemnification. Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties (as hereinafter defined) from and against any and all claims, suits, liabilities (including, without limitation, strict liabilities), actions, proceedings, obligations, debts, damages, losses, costs, expenses, diminutions in value, fines, penalties, charges, fees, expenses, judgments, awards,

amounts paid in settlement, punitive damages, and consequential damages, of whatever kind or nature (including, but not limited to, reasonable attorneys' fees and other costs of defense) (collectively, "Losses") imposed upon, incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any one or more of the following, except to the extent that such Losses arise from the gross negligence or willful misconduct of the Indemnified Parties: (a) other than in connection with a Securitization, any amendment to, or restructuring of, the Debt, the Other Obligations, the Note, the Loan Agreement, this Deed to Secure Debt, or any other Loan Documents; (b) any and all lawful action that may be taken by Lender in connection with the enforcement of the provisions of this Deed to Secure Debt, the Loan Agreement, the Note or any of the other Loan Documents, whether or not suit is filed in connection with the same, or in connection with Borrower, any of the Other Borrowers, any guarantor or indemnitor, and/or any partner, manager, member, joint venturer or shareholder thereof becoming a party to a voluntary or involuntary federal or state bankruptcy, insolvency or similar proceeding; (c) any accident, injury to or death of persons, or loss of or damage to property, occurring in, on or about the Property, or any part thereof, or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or rights-of-way; (d) any use, non-use or condition in, on or about the Property, or any part thereof, or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (e) any failure on the part of Borrower or any of the Other Borrowers to perform or be in compliance with any of the terms of this Deed to Secure Debt, the Note, the Loan Agreement or any of the other Loan Documents; (f) performance by or on behalf of Borrower of any labor or services or the furnishing of any materials or other property in respect of the Property, or any part thereof; (g) any failure of the Property to be in compliance with any Legal Requirements; (h) the enforcement by any Indemnified Party of the provisions of this Article 8; (i) any and all claims and demands whatsoever which may be asserted against Lender by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in any Lease; (j) the payment of any commission, charge or brokerage fee to anyone claiming through Borrower or any of the Other Borrowers which may be payable in connection with the funding of the Loan; or (k) any material misrepresentation made by Borrower or any of the Other Borrowers in this Deed to Secure Debt or in any other Loan Document. Any amount payable to Lender by reason of the application of this Section 8.1 shall become immediately due and payable and shall bear interest at the Default Rate from the date demand for payment of any such Loss then incurred by Lender is made in writing to Borrower until such amount is paid. For purposes of this Deed to Secure Debt, the term "Indemnified Parties" means (A) Lender and any Person who is or will have been involved in the origination of the Loan, (B) any Person who is or will have been involved in the servicing of the Loan, (C) any Person in whose name the encumbrance created by this Deed to Secure Debt is or will have been recorded, (D) any Person who may hold or acquire, or will have held, a full or partial interest in the Loan (including, but not limited to, investors in the Securities, as well as custodians, trustees and other fiduciaries who hold, have held or may hold a full or partial interest in the Loan for the benefit of third parties), and (E) the respective directors, officers, shareholders, partners, managers, members, employees, agents, servants, representatives, contractors, subcontractors, affiliates, subsidiaries, participants, successors and assigns of any and all of the foregoing (including, but not limited to, any other Person who holds or acquires or will have held a participation or other full or partial interest in the Loan or the Property, whether during the term of the Loan or as a part of or following a foreclosure of the Loan and any

successors by merger, consolidation or acquisition of all or a substantial portion of Lender's assets and business). Notwithstanding anything to the contrary contained herein, the following Persons shall not be Indemnified Parties and shall not be entitled to any benefit or rights hereunder or under any other Loan Document: (1) any Person who is not affiliated with Lender who acquires the Property at any time at or following a foreclosure or deed in lieu of foreclosure, or (2) any Person holding any interest in the Property (as owner, tenant or otherwise) through a Person described in the preceding clause (1).

Section 8.2  **Mortgage and/or Intangible Tax**. Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses imposed upon, incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any tax on the making and/or recording of this Deed to Secure Debt, the Note or any of the other Loan Documents, but excluding any income, franchise or other similar taxes.

Section 8.3  **ERISA Indemnification**. Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses (including, without limitation, reasonable attorneys' fees and costs incurred in the investigation, defense and/or settlement of Losses incurred in correcting any prohibited transaction or in the sale of a prohibited loan, and in obtaining any individual prohibited transaction exemption under ERISA that may be required, in Lender's sole discretion) that Lender may incur, directly or indirectly, as a result of a default under Section 4.9 or Section 5.18 of the Loan Agreement.

Section 8.4  **Duty to Defend; Attorneys' Fees and Other Fees and Expenses**. Upon written request by any Indemnified Party, Borrower shall defend such Indemnified Party (if requested by any Indemnified Party, in the name of the Indemnified Party) by attorneys and other professionals approved by the Indemnified Parties. Notwithstanding the foregoing, if the defendants in any such claim or proceeding include both Borrower and any Indemnified Party and Borrower and such Indemnified Party shall have reasonably concluded that there are any legal defenses available to it and/or other Indemnified Parties that are different from or in addition to those available to Borrower, such Indemnified Party shall have the right to select separate counsel to assert such legal defenses and to otherwise participate in the defense of such action on behalf of such Indemnified Party, <u>provided</u> that no compromise or settlement shall be entered without Borrower's consent, which consent shall not be unreasonably withheld. Upon demand, Borrower shall pay or, in the sole and absolute discretion of the Indemnified Parties, reimburse the Indemnified Parties for the payment of reasonable fees and disbursements of attorneys, engineers, environmental consultants, laboratories and other professionals in connection therewith.

# ARTICLE 9

# WAIVERS

Section 9.1  Waiver of Counterclaim. To the fullest extent permitted by applicable law, Borrower hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Lender

-23-

arising out of or in any way connected with this Deed to Secure Debt, the Loan Agreement, the Note, any of the other Loan Documents, or the Obligations.

Section 9.2  **Marshalling and Other Matters**. To the fullest extent permitted by applicable law, Borrower hereby waives the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein. Further, to the extent permitted by applicable law, Borrower hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Deed to Secure Debt on behalf of Borrower, and on behalf of each and every Person acquiring any interest in or title to the Property subsequent to the date of this Deed to Secure Debt. Further, to the extent permitted by applicable law, Borrower hereby expressly waives any defense Borrower might assert or have by reason of Lender's failure to make any tenant or lessee of the Property a party defendant in any foreclosure proceeding or action instituted by Lender.

Section 9.3  **Waiver of Notice**. To the fullest extent permitted by applicable law, Borrower shall not be entitled to any notices of any nature whatsoever from Lender except with respect to matters for which this Deed to Secure Debt or the other Loan Documents specifically and expressly provide for the giving of notice by Lender to Borrower and except with respect to matters for which Lender is required by applicable law to give notice, and Borrower hereby expressly waives the right to receive any notice from Lender with respect to any matter for which this Deed to Secure Debt or the other Loan Documents do not specifically and expressly provide for the giving of notice by Lender to Borrower.

Section 9.4  **Waiver of Jury Trial**. EACH OF THE PARTIES HERETO HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND FOREVER WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE NOTE, THE LOAN AGREEMENT, THIS DEED TO SECURE DEBT OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY EACH OF THE PARTIES HERETO, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH OF THE PARTIES HERETO HEREBY AUTHORIZES THE OTHER PARTY HERETO TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY BORROWER AND LENDER.

Section 9.5  **Survival**. The indemnifications made pursuant to Article 8 hereof shall continue indefinitely in full force and effect and shall survive and shall in no way be impaired by any of the following: (a) any satisfaction, release or other termination of this Deed to Secure Debt or any other Loan Document; (b) any assignment or other transfer of all or any portion of this Deed to Secure Debt or any other Loan Document or Lender's interest in the Property (but, in such case, such indemnifications shall benefit both the Indemnified Parties and any such assignee or transferee); (c) any exercise of Lender's rights and remedies pursuant hereto, including, but not limited to, foreclosure or acceptance of a deed in lieu of foreclosure;

(d) any exercise of any rights and remedies pursuant to the Loan Agreement, the Note or any of the other Loan Documents; (e) any transfer of all or any portion of the Property (whether by Borrower or by Lender following foreclosure or acceptance of a deed in lieu of foreclosure or at any other time); (f) any amendment to this Deed to Secure Debt, the Loan Agreement, the Note or the other Loan Documents; and/or (g) any act or omission that might otherwise be construed as a release or discharge of Borrower from the Obligations or any portion thereof.

Section 9.6  **Sole Discretion of Lender**. Whenever pursuant to this Deed to Secure Debt, Lender exercises any right given to it to approve or disapprove, or any arrangement or term is to be satisfactory to Lender, the decision of Lender to approve or disapprove or to decide whether arrangements or terms are satisfactory or not satisfactory shall (except as is otherwise specifically herein provided) be in the sole discretion of Lender and shall be final and conclusive.

Section 9.7  **Waiver of Statute of Limitations**. Borrower hereby expressly waives and releases to the fullest extent permitted by law, the pleading of any statute of limitations as a defense to payment of the Debt or performance of its Other Obligations.

## ARTICLE 10

## EXCULPATION

The provisions of Article XV of the Loan Agreement are hereby incorporated by reference into this Deed to Secure Debt to the same extent and with the same force as if fully set forth herein.

## ARTICLE 11

## NOTICES

All notices or other written communications hereunder shall be delivered in accordance with Section 16.1 of the Loan Agreement.

## ARTICLE 12

## APPLICABLE LAW

Section 12.1  **Governing Law**. THIS DEED TO SECURE DEBT SHALL BE DEEMED TO BE A CONTRACT ENTERED INTO PURSUANT TO THE LAWS OF THE STATE OF NEW YORK AND SHALL IN ALL RESPECTS BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, PROVIDED HOWEVER, THAT WITH RESPECT TO THE CREATION, PERFECTION, PRIORITY AND ENFORCEMENT OF THE LIEN OF THIS DEED TO SECURE DEBT, AND THE DETERMINATION OF DEFICIENCY JUDGMENTS, THE LAWS OF THE STATE WHERE THE PROPERTY IS LOCATED SHALL APPLY.

Section 12.2  <u>Usury Laws</u>. Notwithstanding anything to the contrary contained herein, (a) all agreements and communications between Borrower and Lender are hereby and shall automatically be limited so that, after taking into account all amounts deemed to constitute interest, the interest contracted for, charged or received by Lender pursuant to the Loan Documents shall never exceed the Maximum Legal Rate or the maximum lawful amount, (b) in calculating whether any interest exceeds the Maximum Legal Rate, all such interest shall be amortized, prorated, allocated and spread over the full amount and term of all principal indebtedness of Borrower to Lender, and (c) if through any contingency or event, Lender receives or is deemed to receive interest in excess of the Maximum Legal Rate, any such excess shall be deemed to have been applied toward payment of the principal of any and all then outstanding indebtedness of Borrower to Lender, or if there is no such indebtedness, shall immediately be returned to Borrower.

Section 12.3  <u>Provisions Subject to Applicable Law</u>. All rights, powers and remedies provided in this Deed to Secure Debt may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent necessary so that they will not render this Deed to Secure Debt invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable law. If any term of this Deed to Secure Debt or any application thereof shall be invalid or unenforceable, the remainder of this Deed to Secure Debt and any other application of the term shall not be affected thereby.

## ARTICLE 13

## DEFINITIONS

Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Deed to Secure Debt may be used interchangeably in the singular or plural form, and the word "<u>Borrower</u>" shall mean "Borrower and any subsequent owner or owners of the Property or any part thereof or any interest therein," the word "<u>Lender</u>" shall mean "Lender and any subsequent holder of the Note," the word "<u>Note</u>" shall mean "the Note and any other evidence of indebtedness secured by this Deed to Secure Debt," the word "Property" shall include any portion of the Property and any interest therein, and the phrases "attorneys' fees", "legal fees" and "counsel fees" shall include any and all attorneys', paralegal and law clerk fees and disbursements, including, but not limited to, fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Lender in protecting its interest in the Property, the Leases and/or the Rents and enforcing its rights hereunder. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms.

## ARTICLE 14

## MISCELLANEOUS PROVISIONS

Section 14.1  <u>No Oral Change</u>. This Deed to Secure Debt, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated

orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party or parties against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

Section 14.2 *Successors and Assigns*. This Deed to Secure Debt shall be binding upon and shall inure to the benefit of Borrower and Lender and their respective successors and permitted assigns, as set forth in the Loan Agreement. Lender shall have the right to assign or transfer its rights under this Deed to Secure Debt in connection with any assignment of the Loan and the Loan Documents. Any successor, assignee or transferee of Lender shall be entitled to all the benefits afforded to Lender under this Deed to Secure Debt. Borrower shall not have the right to assign or transfer its rights or obligations under this Deed to Secure Debt without the prior written consent of Lender, as provided in the Loan Agreement, and any attempted assignment without such consent shall be null and void.

Section 14.3 *Inapplicable Provisions*. If any term, covenant or condition of the Loan Agreement, the Note, this Deed to Secure Debt or any of the other Loan Documents is held to be invalid, illegal or unenforceable in any respect, the Loan Agreement, the Note, this Deed to Secure Debt and such other Loan Document shall be construed without such provision.

Section 14.4 *Headings, Etc*. The headings and captions of the various Sections of this Deed to Secure Debt are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

Section 14.5 *Subrogation*. If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Property, then, to the extent of the funds so used, Lender shall be subrogated to all of the rights, claims, liens, titles and interests existing against the Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles and interests, if any, are not waived but rather are continued in full force and effect in favor of Lender and are merged with the lien and security interest created herein as cumulative security for the payment of the Debt, the performance and discharge of Borrower's obligations hereunder and under the Loan Agreement, the Note and the other Loan Documents, and the performance and discharge of the Other Obligations.

Section 14.6 *Entire Agreement*. The Note, the Loan Agreement, this Deed to Secure Debt and the other Loan Documents constitute the entire understanding and agreement between Borrower and Lender with respect to the transactions arising in connection with the Obligations and supersede all prior written or oral understandings and agreements between Borrower and Lender with respect thereto. Borrower hereby acknowledges that, except as incorporated in writing in the Note, the Loan Agreement, this Deed to Secure Debt and the other Loan Documents, there are not, and were not, and no Persons are or were authorized by Lender to make, any representations, understandings, stipulations, agreements or promises, oral or written, with respect to the transaction which is the subject of the Note, the Loan Agreement, this Deed to Secure Debt and the other Loan Documents.

Section 14.7 *Limitation on Lender's Responsibility*. No provision of this Deed to Secure Debt shall operate to place any obligation or liability for the control, care, management

or repair of the Property upon Lender, nor shall it operate to make Lender responsible or liable for any waste committed on the Property by the tenants or any other Person, or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger. Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession."

Section 14.8 <u>After-Acquired Property</u>. All property acquired by Borrower after the date of this Deed to Secure Debt which by the terms of this Deed to Secure Debt shall be subject to the Lien and the security interest created hereby, shall immediately upon the acquisition thereof by Borrower and without further conveyance or assignment become subject to the Lien and security interest created by this Deed to Secure Debt. Nevertheless, Borrower shall execute, acknowledge, deliver and record or file, as appropriate, all and every such further deeds to secure debt, security agreements, financing statements, assignments and assurances as Lender shall require for accomplishing the purposes of this Deed to Secure Debt.

Section 14.9 <u>Principles of Construction</u>. In the event of any inconsistencies between the terms and conditions of this Deed to Secure Debt and the terms and conditions of the Loan Agreement, the terms and conditions of the Loan Agreement shall control and be binding.

Section 14.10 <u>Variable Interest Rate</u>. The Loan secured by this Deed to Secure Debt is a variable interest rate loan, as more particularly set forth in the Loan Agreement.

Section 14.11 <u>Brokers and Financial Advisors</u>. Each of Lender and Borrower hereby represents that it has dealt with no financial advisors, brokers, underwriters, placement agents, agents or finders in connection with the transactions contemplated by this Deed to Secure Debt. Each of Lender and Borrower hereby agrees to indemnify, defend and hold the other harmless from and against any and all claims, liabilities, costs and expenses of any kind (including attorneys' fees and expenses) in any way relating to or arising from a claim that any person or entity acted on behalf of the indemnifying party in connection with the transactions contemplated herein. The provisions of this Section shall survive any release or termination of this Deed to Secure Debt whether occasioned by a repayment of the indebtedness secured hereby or otherwise.

Section 14.12 <u>Cross Default; Cross Collateralization</u>. Borrower acknowledges that Lender has made the Loan to Borrower and the Other Borrowers upon the security of the collective interest in the Property (as defined in the Loan Agreement) in reliance upon the aggregate of the Individual Properties (as defined in the Loan Agreement) taken together being of greater value as collateral security than the sum of each Individual Property taken separately. Borrower agrees that this Deed to Secure Debt and the other Mortgages (as defined in the Loan Agreement) executed simultaneously herewith and more particularly described in the Loan Agreement (the "<u>Other Security Instruments</u>") given by the Other Borrowers are and will be cross-collateralized and cross-defaulted with each other so that (i) an Event of Default under this Deed to Secure Debt shall constitute an Event of Default under the Other Security Instruments, (ii) an Event of Default under any of the Other Security Instruments shall constitute an Event of Default under this Deed to Secure Debt; (iii) an Event of Default under the Note shall constitute

an Event of Default under this Deed to Secure Debt and the Other Security Instruments and (iv) this Deed to Secure Debt and each of the Other Security Instruments constitute security for the Note as if a single blanket lien were placed on all of the Individual Properties as security for the Note; provided, that, to the extent that this Deed to Secure Debt contains a maximum principal amount to be secured by this Deed to Secure Debt, this Section 14.12 shall not increase such maximum principal amount.

## ARTICLE 15

## STATE-SPECIFIC PROVISIONS

Section 15.1    Principals of Construction.    In the event of any inconsistencies between the terms and conditions of this Article 15 and the terms and conditions of any other Article or Section of this Deed to Secure Debt, the terms and conditions of this Article 15 shall control and be binding.

(a)    Definitions.    Each and every reference herein to "lien" shall be deemed to refer to security title. Each and every reference to "foreclosure" herein shall be deemed to refer to power of sale, sale or foreclosure under power of deed or transfer in lieu thereof

(b)    Power of Sale.    Upon the occurrence and during the continuance of any Event of Default, Borrower agrees that Lender may sell the Property at auction before the door of the courthouse in the county in which the Property, or any part hereof, is located, to the highest bidder for cash, after advertising the time, terms and place of such sale once a week for four weeks immediately preceding such sale (but without regard to the number of days intervening between the date of publication of the first advertisement and the date of sale) in a newspaper published in such county, or in the paper in which the sheriffs advertisements for such county are then being published, all other notice being hereby waived by Borrower. Lender may thereupon execute and deliver to the purchaser at such sale a conveyance of the Property in fee simple, which conveyance shall contain recitals as to the Event of Default upon which the execution of the power of sale herein granted depends, and Borrower hereby constitutes and appoints Lender the true and lawful attorney-in-fact of Borrower to make such recitals, sale and conveyance, and all of the acts of Lender as such attorney-in-fact are hereby ratified and confirmed. Borrower agrees that such recitals shall be binding and conclusive upon Borrower and that the conveyance to be made by Lender shall divest Borrower of all right, title, interest, equity and right of redemption, including any statutory redemption, in and to the Property. Lender shall collect the proceeds of such sale, and after reserving therefrom the entire debt secured hereby (and reasonable attorney's fees) and all costs and expenses of such sale, shall pay any surplus to Borrower, all as provided by law. The power and agency hereby granted are coupled with an interest and are irrevocable by death or dissolution, or otherwise, and are in addition to any and all other remedies which Lender may have hereunder, at law or in equity. The aforesaid power of sale and agency (a) are granted as cumulative of all the other remedies provided herein or at law or in equity for the collection of the Debt and all other sums described herein, (b) shall not be exhausted by one or more exercises thereof, and (c) may be exercised in such order, as to the entire Property or portions thereof, as Lender may in its sole discretion elect until full payment of the Debt and other sums described herein. Lender and its agents, representatives, successors or assigns, may be a purchaser of the Property or any part thereof or

of any interest therein at any sale thereof, whether pursuant to foreclosure or otherwise hereunder, and may bid for and acquire the Property or any part thereof and in lieu of paying cash therefore may apply upon the purchase price the Debt owing to such purchaser, to the extent of such purchaser's distributive share of the purchase price. Any such purchaser shall, upon any such purchase, acquire good title to the properties so purchased, free of all rights of redemption in Borrower.

(c) <u>Receipt a Sufficient Discharge to Purchaser</u>. Upon any sale of the Property or any part thereof or any interest therein, whether pursuant to foreclosure or otherwise hereunder, the receipt of the officer making the sale under judicial proceedings or of Lender shall be sufficient discharge to the purchaser for the purchase money, and such purchaser shall be obliged to see to the application thereof.

(d) <u>Separate Sales</u>. In the event of any sale under this Deed to Secure Debt by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceedings or otherwise, the Property may be sold as an entirety or in separate parcels in such manner or order as Lender may, in its sole discretion, elect; and if Lender so elects, Lender may sell or cause to be sold any portion of the Property constituting personal property at one or more separate sales in any manner permitted by the Uniform Commercial Code; and one or more exercises of the powers herein granted shall not extinguish or exhaust such powers, until the entire Property is sold or the Debt is paid in full. If the Debt is now or hereafter further secured by any chattel mortgages, pledges, contracts of guaranty, assignments of lease or other security, Lender may at its option exhaust or cause to be exhausted the remedies granted under any of said security, either concurrently or independently, and in such order as it may determine.

(e) <u>Waiver of Appraisement, Valuation, Bond, Etc</u>. Borrower hereby waives, to the full extent it may lawfully do so, the benefit of all rights and equities of appraisement, evaluation, stay, extension, moratorium, inventory and redemption, whether at law or in equity (including, without limitation, any statutory right of redemption), now or hereafter in force with respect to any amount secured hereby, all rights of marshalling in the event of any sale of the Property or any part thereof or any interest therein upon foreclosure as provided in this Deed to Secure Debt, and any right Borrower may have to require Lender to obtain any bond or make any oath.

(f) <u>Sale a Bar against Borrower</u>. Any sale of the Property or any part thereof or any interest therein, whether pursuant to foreclosure or otherwise hereunder, shall forever be a perpetual bar against Borrower.

(g) <u>Attorney's Fees and Collection Costs</u>. If the Note or any amount secured hereby is collected by suit or through an attorney, Borrower agrees to pay all costs of collection, reasonable attorney's fees, costs and expenses and all other costs, expenditures and expenses incurred by or on behalf of Lender.

(h) <u>Waiver</u>. BORROWER HEREBY WAIVES ANY RIGHT BORROWER MAY HAVE UNDER THE CONSTITUTION OF THE STATE OF GEORGIA OR THE CONSTITUTION OF THE UNITED STATES OF AMERICA TO NOTICE OR TO A JUDICIAL HEARING PRIOR TO THE EXERCISE OF ANY RIGHT OR REMEDY PROVIDED BY THIS DEED TO SECURE DEBT TO LENDER AND BORROWER WAIVES THE RIGHTS, IF ANY, TO SET ASIDE OR INVALIDATE ANY SALE DULY CONSUMMATED IN ACCORDANCE WITH THE PROVISIONS OF THIS DEED TO SECURE DEBT ON THE GROUND (IF SUCH BE THE CASE) THAT THE SALE WAS CONSUMMATED WITHOUT A PRIOR JUDICIAL HEARING. ALL WAIVERS BY BORROWER IN THIS PARAGRAPH HAVE BEEN MADE VOLUNTARILY, INTELLIGENTLY AND KNOWINGLY, AFTER BORROWER HAS BEEN FIRST INFORMED BY COUNSEL OF BORROWER'S OWN CHOOSING AS TO POSSIBLE ALTERNATIVE RIGHTS AND HAVE BEEN MADE AS AN INTENTIONAL RELINQUISHMENT AND ABANDONMENT OF A KNOWN RIGHT AND PRIVILEGE.

_____
Initial

(i) <u>No Residential Units</u>. There are no residential units in the Property. To Borrower's knowledge, no person occupies any part of the Property for dwelling purposes.

[NO FURTHER TEXT ON THIS PAGE]

IN WITNESS WHEREOF, this Deed to Secure Debt has been executed by Borrower as of the day and year first above written.

BORROWER:

Signed, sealed and delivered as to Borrower in the presence of:

JER/JAMESON PROPERTIES LLC, a Delaware limited liability company

By: JER/Jameson Mezz Borrower I LLC, a Delaware limited liability company, its sole member

*[signature]*
Witness

*[signature]*
Notary Public

By: *[signature]*
Name: C. David Carley, III
Title: Vice President

(NOTARIAL SEAL)

JENNIFER E FICKLEN
NOTARY PUBLIC
COBB COUNTY
STATE OF GEORGIA
My Commission Expires February 7, 2010

My Commission expires: _____, ____

Deed to Secure Debt- Georgia

# SCHEDULE 1

## "Other Borrowers"

| | |
|---|---|
| 1. | JER/Jameson NC Properties LP, a Delaware limited partnership |

**EXHIBIT A**

**LEGAL DESCRIPTION**

00249

All those tracts or parcels of land in Land Lot 242 of the 20th Land District of Bainbridge, Decatur County, Georgia described as all of Parcel B containing 1.7856 acres, and all of Parcel C containing 0.2870 acres. Said Parcels are shown on a plat of survey prepared by Richard M. Pace recorded in Cabinet B, Slide 107-8, Plat Records of Decatur County, Georgia.

Together with:

ALSO, a perpetual easement as set forth in Book A-18, page 266, Land Records of Decatur County, Georgia.

0251

# EXHIBIT B

## LIST OF PROPERTIES

1) 2720 Dawson Road, Albany, GA 31707 (Dougherty County)
2) 1605 E. Lamar St, Americus, GA 31709 (Sumter County)
3) 1403 Tallahassee Hwy, Bainbridge, GA 39819 (Decatur County)
4) 661 Scranton Rd., Brunswick, GA 31520 (Glynn County)
5) 189 Jameson St., Calhoun, GA 30701 (Gordon County)
6) 700 S. Park St., Carrollton, GA 30117 (Carroll County)
7) 1164 Dogwood Drive, Conyers, GA 30012 (Rockdale County)
8) 790 College Drive, Dalton, GA 30720 (Whitfield County)
9) 205 N. Hwy 301, Jesup, GA 31545 (Wayne County)
10) 105 Maycreek Dr., Kingsland, GA 31548 (Camden County)
11) 110 Jameson Dr., LaGrange, GA 30241 (Troup County)
12) 40 Lakeside Way, Newnan, GA 30265 (Coweta County)
13) 125 Bourne Ave., Pooler, GA 31322 (Chatham County)
14) 40 Grace Dr., Rome, GA 30161 (Floyd County)
15) 1010 Hwy 19 N., Thomaston, GA 30286 (Upson County)
16) 1725 Gornto Rd., Valdosta, GA 31601 (Lowndes County)
17) 2731 Watson Blvd., Warner Robins, GA 31093 (Houston County)
18) 950 City Blvd, Waycross, GA 31501 (Ware County)
19) 1436 N. Liberty St., Waynesboro, GA 30830 (Burke County)